## BROWN v. McCOLLUM.

1. **Schools**: COUNTY SUPERINTENDENT: ELECTION: CONTEST BY WOMAN. Chapter 136, Laws of 1876, making women eligible to any school office, has the effect to entitle a woman claiming to have been elected to any such office, but denied a certificate of election, to the right to contest the election, although she is not an elector, as required by Code, section 692,—the effect of the first named statute being to repeal to that extent the section last named.

2. **Elections**: CONTEST : GROUNDS OF : AMENDMENT. Section 697 of the Code, requiring the contestant of an election to file his statement of contest within twenty days after the canvass of votes, does not prevent the contestant from afterwards amending the grounds of the contest.

3. ———: ———: IRREGULAR AND IMPERFECT BALLOTS : INTENTION OF ELECTOR PREVAILS. In an election contest, where there is a dispute as to whom certain ballots should be counted for, the intention of the voter, if it can be ascertained from the ballot itself, or from the ballot examined and considered in the light of all the facts and circumstances, should control, but if such intention cannot be fairly determined, the ballot should be rejected. If such intention can be found, it cannot be defeated by the fact that the name of the candidate is misspelled, or the wrong initials are employed, or some other or slightly different name of like or similar sound has been written instead of the real name of the candidate intended to be voted for. If the name of one candidate is printed, and of the other written, on the ballot, the writing will prevail over the printing, but if the writing is erased the printing will prevail. Drawing a line through the printing will have the effect to erase it. If it is apparent that the voter intended to cast his ballot for the officer in controversy, it is immaterial that the name of the person voted for is written a little above or below the proper place on the ticket, but if it is not fairly apparent for which office the voter intended to vote for. the person named, the ballot must be rejected.

*Appeal from Wright District Court.*—HON. S. M. WEAVER, Judge.

FILED, JANUARY 16, 1889.

AT the general election in the year 1887, the plaintiff and the defendant were opposing candidates for the office of superintendent of schools for Wright county. The board of canvassers for said county declared the defendant to be the successful candidate, having received more votes for the office than the plaintiff. The plaintiff filed a statement of intention to contest the election, and notice thereof was issued and served upon the defendant. The court of contest was organized, and a hearing was had, which resulted in declaring that the plaintiff was legally elected to the office. From this order the defendant appealed to the district court, where a trial was had by a jury, and a verdict was returned and judgment rendered for the plaintiff. Defendant appeals.

*Nagle & Birdsall*, for appellant.

*A. R. Ladd* and *F. W. Pillsbury*, for appellee.

ROTHROCK, J.—I. It is insisted by counsel for appellant that the plaintiff has no right to make the contest, because she is a woman, and not an elector. It is provided by section 697 of the Code that the written statement of intention to contest an election shall set forth "the name of contestant, and that he is an elector of the county." He is also required to file a bond conditioned to pay costs in case his contest shall fail. The statement of contest, as made by the plaintiff, sets forth that she is an elector of the county. This is not the fact. She is a woman, and was not entitled to vote at a general election. But by section 1, chapter 136, Laws Sixteenth General Assembly, it is provided "that no person shall be deemed ineligible, by reason of sex, to any school office in the state of Iowa;" and section 2 of the act provides that "no person who may have been or shall be elected or appointed to the office of county superintendent of common schools, or school director, in the state of Iowa, shall be deprived of office by reason of sex." If the position of appellant be sound, a woman may lawfully be elected to the office, but she cannot assert the right to hold the office by means of the contest provided by law, because she is not an elector of the county. Section 692, which provides for the contest, was enacted when it was supposed that males were alone entitled to an election to office, and the qualification was that the person elected should be an elector of the county. It was essential, therefore, that the person making the contest should be an elector; for otherwise he would have no right to contest. The requirement that it must be set forth that the contestant is an elector of the county, is manifestly for the purpose of showing that he is eligible to the office, and entitled

*Margin note:* 1. SCHOOLS: county superintendent: election: contest by woman.

to make a contest for it.  The enactment of the statute above cited, making women eligible to the office, should therefore be held to be a repeal by implication of so much of the statute before that time in force as required the technical statement that the contestant is an elector.  The true inquiry should be, is the contestant eligible to the office?  It is no answer to this position to say that the plaintiff should be required to assert her right to the office by *quo warranto* or some other proceeding.  The legislative intent was to place the two cases on an equality, so far as the right to hold school offices is involved.

II.  The plaintiff amended her grounds of contest after the twenty days within which she was required by section 697 of the Code to file the written statement of contest.  It is claimed that, because that section of the law provides that the statement shall set forth the "particular causes of contest," there can be no amendment including other causes.  This position is not tenable.  The statute provides that the proceedings shall be assimilated to those in an action, so far as practicable, and that the court of contest shall have all the powers of the district court necessary to the right hearing and determination of the matter, and that the statement shall not be dismissed for want of form, and that if any of the causes are held insufficient they may be amended.  Code, secs. 702, 705.  These provisions of the law plainly imply that the twenty days within which the statement must be filed does not operate as a statute of limitations, so as to prevent any amendment the plaintiff may think proper to make.

2. ELECTIONS: contest: grounds of: amendment.

III.  One of the grounds of contest was that illegal votes were cast at the election.  The jury found that there were two illegal votes, one of which was cast for the defendant.  The person who cast the vote was one Robertson.  It is so plain that he did not have the required residence in the county to be a lawful voter

3. —— : —— : irregular and imperfect ballots: intention of elector prevails.

that we must omit a discussion of that question. The jury also found that no illegal vote was cast for the plaintiff. This finding of the jury cannot be disturbed, and we may say generally that we find no error in any of the rulings of the court upon the question of illegal votes.

IV. The real question in the case arises upon twenty-five ballots which were found among those cast at the election. It was stipulated on the trial

THE SAME.

that, excluding the twenty-five contested ballots, there were cast at said election for said office 971 votes for J. R. McCollum, the incumbent, and 971 votes for Ella S. Brown, the contestant. The jury did not find a general verdict. They answered certain special interrogatories submitted to them by the court at the request of the defendant. By these answers they counted or allowed eleven of the contested ballots to the incumbent, and twelve to the contestant, and rejected two as having been cast for neither of the parties. The result ( counting out the illegal vote cast by Robertson for the incumbent) was the election of the plaintiff by two majority. The twenty-five ballots in dispute were all printed. They contained the names of candidates for all the state and county offices voted for at that election. The name of the plaintiff was printed on fifteen of the ballots as the candidate for superintendent of schools, and the name of the defendant was printed on ten of the ballots for the same office. The contest arises over the erasure of the name printed upon the tickets, and the writing of the name of the opposing candidate in its place, or on the margin of the ticket. This writing was all done in pencil, and the lines are heavy, and the writing of a very indifferent order. The erasures in some instances are very dim, and on one or two of the tickets it appears, not by lines drawn through the name, but as though there had been lines, and an attempt made to rub them out. It is impossible to describe the tickets as they appear. Each of the parties have endeavored to reproduce them in printed abstracts, and the clerk of the district court in a transcript used printed tickets,

and attempted to make erasures and interlineations like the original. These attempts at copying all fail to exactly present the tickets as they are. The original tickets were used upon the trial in the court of contest, and they were submitted to the jury in the district court, and have been certified to this court. The defendant was the regular nominee of the republican party for the office. The plaintiff was an independent candidate, but was voted for by the democratic party. It does not appear that there was any other candidate for the office. The name of the plaintiff is printed on some of the ballots as Ella S. Brown, and on others as Miss Ella Brown. In erasing the name of McCollum and writing that of Brown, in some instances no Christian name is written,—it is simply "Brown." In some of the tickets where her name is erased and the defendant's name is written, the Christian name of the defendant is also omitted. The jury counted these ballots for the party whose name was thus written. On other tickets the initials, "J. B." instead of "J. R." precede the surname McCollum, and in writing the name of the plaintiff some are as follows: Mrs. A. Brown, Ella Brown, Miss Emma Brown, and Elice Brown. All of these ballots were counted for the plaintiff. It does not appear that there was a Mrs. Brown in the county. There was a Miss Emma A. Brown, who was a visitor in Clarion at the time of the election. She came from another state in September previous. But the vote for Miss Emma Brown was cast in Blaine township, some distance from Clarion.

We have stated these facts because the defendant requested the court to instruct the jury that some of these ballots could not be counted for the plaintiff, not only because of the difference in name, but because the written name was not under nor opposite to the designation of the office. All of these instructions were refused, and the court instructed the jury upon these questions as follows: "There have been submitted in evidence, for your inspection, twenty-five ballots which were cast at said election, and it will be your duty to

find and determine from the ballots themselves, and from the evidence under the law as given in this charge, for which of the parties to this contest, if for either, each of said votes was cast. The intention of the voter, if it can be ascertained from the ballot itself, or from the ballot examined and considered in the light of all the facts and circumstances developed in the trial, should be respected, and the ballot counted for the person for whom the voter intended it. If, however, the intention of the voter is not apparent, or if it cannot be reasonably and fairly ascertained under the evidence in the case, then such ballot should be rejected altogether. If the ballot expresses the intention of the voter beyond a reasonable doubt, it is sufficient, without regard to technical inaccuracies in the form of the ballot. The language and form of the ballot should be considered, and construed in the light of all the facts connected with the election; as, for instance, the office to be filled, the names of the candidates voted for, and all the other facts of a general public nature surrounding the election, of which the voter may be presumed to have been advised, and in view of which he may be presumed to have expressed his franchise. If, from an inspection of the ballot, and from all the facts surrounding the same and surrounding the election at which such ballot was cast, you can find and fully satisfy yourself of the voter's intention, such intention should not be defeated or frustrated by the fact that the name of the candidate is misspelled, or the wrong initials were employed, or some other or slightly different name of like or similar pronunciation or sound has been written instead of the real candidate actually intended to be voted for. Several of the disputed ballots in this case contained names more or less similar to those of the parties to this contest. These names are variously spelled, are accompanied or distinguished by various initials, while others are without any expressed Christian name, and on still others the Christian name made use of by the voter is not the real Christian name of the party claiming the benefit of such vote. Still other names are imperfectly and

somewhat blindly and illegibly written. All such votes should be carefully and fairly considered and examined, as directed in the charge, and if therefrom you find it fairly and reasonably apparent that said ballots, or any of them, were intended for either of the parties to this contest, then you should so count them. If not so intended, or if the intention of the voter in any particular case cannot be fairly and reasonably ascertained, then such ballot should be rejected, and counted for neither party. On some of the ballots submitted to you will be found the names of both the parties to this contest,—one being printed and the other written thereon, neither being erased or crossed off. In such cases the writing will be presumed to express the intention of the voter, and will prevail over the printing, and such ballot will be counted as cast for the person designated by the writing, and the printed name will be considered as erased. If, however, after writing the name of the candidate on the ballot, the voter has erased it, leaving the printed name unerased, it must be counted as printed. A name will be considered erased if a line be drawn through it, even though it be not wholly obliterated. A vote cast for either of the parties to this contest for any other office than superintendent of schools cannot be counted for such party in this proceeding; but the mere fact that, in writing the name on his ballot, the voter has placed it slightly above or below its proper place on the ticket, will not justify you in rejecting such ballot, if it be apparent from the face thereof that he in fact intended to cast such vote for the office in controversy. If the ballot in any instance contain the name of either party, but does not fairly state or indicate the office such party is voted for, you will reject it altogether." We regard these instructions as eminently fair to the parties. They embody the law, as found in McCrary, Elect., sections 508, 509, and elsewhere, and find support in the leading case of *People v. Saxton*, 22 N. Y. 309.

Counsel for appellant contends that the rule adopted by the court, that the written name should prevail over

the printed one where the latter is not erased, is erroneous, and that the rule applies only where it appears that the voter himself wrote the name. We think the later rule is that it should be presumed that the voter fixed and altered the ticket, or procured another to do it for him. Again, it is claimed that where both names appear without erasure the one first in order should be counted, and section 625 of the Code is cited in support of the position. The section is plainly intended to apply where more than one officer is to be elected to the same office, as in case of two or more justices of the peace, railroad commissioners or the like. In conclusion, we have to say that we find no error in the rulings, nor in the instructions of the court to the jury. We do not think that the court should have, as matter of law, directed a finding as to any of the disputed ballots; and, after a careful examination of them, we think the jury were fully warranted from the evidence in answering the special interrogatories as they did.

AFFIRMED.