(No. 19234.—

GUS CRAY, Appellee, *vs.* WALTER DAVENPORT, Appellant.

*Opinion filed December 20, 1928—Rehearing denied Feb. 8, 1929.*

PAUL M. HAMILTON, and HUGH W. CROSS, for appellant.

SUMNER & REARDON, for appellee.

376

Mr. JUSTICE HEARD delivered the opinion of the court:

At the township election in the town of Jersey, in Jersey county, held on April 3, 1928, appellee, Gus Cray, was the democratic candidate, and appellant, Walter Davenport, was the republican candidate for the office of highway commissioner. The returns of the election judges and the canvass thereof showed that appellant received 692 votes and appellee 689 votes, giving appellant a majority of three votes. On April 9, 1928, appellee filed a petition in the county court of Jersey county to contest appellant's election, alleging irregularities in the ballots counted for appellant in each one of the four voting precincts into which the town of Jersey was divided. Appellant answered the petition, denying all charges, errors and irregularities alleged in the petition. The court ordered a re-count of the ballots, and, after the production of the ballots, poll-lists and tally-lists in court, disregarded the ballots in the first precinct because they had been manifestly tampered with after their return to the town clerk, who was a candidate for re-election upon the ticket with appellee. As originally canvassed appellee received 146 votes in the first precinct, 255 in the second, 138 in the third and 150 in the fourth, making a total of 689 votes for appellee, while appellant received 157 votes in the first, 208 in the second, 213 in the third and 114 in the fourth, making a total of 692 votes for appellant. The county court, as the result of the contest and re-count, awarded appellee 146 votes in the first precinct, 251 in the second, 138 in the third and 147 in the fourth, making a total of 682 votes for appellee, while appellant was given 157 votes in the first, 180 in the second, 208 in the third and 118 in the fourth, making a total of 663 votes for appellant. A decree was entered declaring appellee elected by a majority of 19 votes. From this decree appellant has perfected an appeal to this court, and the court ordered that all of the original ballots and the origi-

nal containers thereof produced on the hearing, and the original poll-books, tally-sheets and returns of the judges in the four precincts which were introduced in evidence, be certified to this court, and the same was accordingly done.

Appellant objected to the introduction in evidence of the ballots of the first and second precincts upon the ground that the evidence did not show that the ballots had been preserved in such a way that there was no reasonable opportunity for tampering with them, and that the ballots were not shown by the contestant to be the identical ballots cast at the election and that they were in the same condition as when cast. After hearing the evidence the court held that the objection to the ballots of the first precinct was well taken and accepted the returns of the judges and clerk of the election as to the result of the election in that precinct. No cross-error is assigned on this ruling. The objection to the ballots of the second precinct was overruled. While there was evidence strongly tending to sustain appellant's contention in regard to this question, it is not necessary for us to determine it.

Various other questions are raised by appellant, only one of which is it necessary for us to consider. The re-count of the ballots showed ten ballots in the second precinct, two in the third and nine in the fourth which were marked either for "Davenport" or "Mr. Davenport." None of these ballots were counted for appellant. In *Talkington* v. *Turner*, 71 Ill. 234, where Joseph Talkington was a candidate for constable, it was held that ballots cast for "Talkington" for that office should be counted for him. In *Clark* v. *Robinson*, 88 Ill. 498, where E. E. Clark and William E. Robinson were the only candidates for the office of clerk of the circuit court of Coles county, this court held that votes cast for "Clark" should be counted for E. E. Clark and ballots cast for "Robertson" and "Robin" should be counted for William E. Robinson. In *Kreitz* v. *Behrensmeyer*, 125 Ill. 141, where it was shown that there were but

three candidates for the office of county treasurer, John B. Kreitz, the democratic nominee, Charles F. A. Behrensmeyer, the republican nominee, and B. L. Dickerman, the prohibition nominee, and that Kreitz had a brother named John M. Kreitz, who was not a candidate, and that John B. Kreitz was ordinarily known and called John Kreitz while John M. Kreitz was ordinarily known and called Mat Kreitz, it was held that some tickets bearing the name of John M. Kreitz for county treasurer were properly counted for John B. Kreitz, the court saying: "Ordinarily the middle letter is no part of the name, and, under the circumstances mentioned, the trial court properly attached no significance to it. The vote was evidently intended, as it was counted, for John B. Kreitz. It was likewise in proof that there were other persons than appellee in Adams county of the name of Behrensmeyer, and appellant objected to many ballots counted for appellee which had merely Behrensmeyer upon them, for treasurer, without any designation of the christian name. It was shown that no other Behrensmeyer was a candidate at that election for the office of treasurer or any other office, and we think, therefore, the court properly counted the ballots as cast for appellee." In *Constant v. Shockey,* 259 Ill. 496, the three cases above mentioned are cited with approval, and it is said: "When the question is for whom a ballot should be counted, the intention of the voter should, if possible, be ascertained, and when ascertained it must control. (*McKinnon v. People,* 110 Ill. 305.) It has always been held that if the intention of the voter can be ascertained from his ballot, though not in strict conformity with the law, effect will be given his ballot. (*Parker v. Orr,* 158 Ill. 609.) In this last case the court also said that the Australian Ballot law of 1891 did not change the rule in this regard, 'unless to give effect to such intention would destroy the secrecy of the ballot.' " In *Sievers v. Hannah,* 296 Ill. 593, where William Alexander was a candidate for commissioner of highways, there

were five ballots upon which was written in the blank space beneath the words "For Commissioner of Highways" the name "Alexander" and a cross placed in the square at the left of the name, and the oral proof showed that at the time the election was held there were four male persons of the name of Alexander living within the limits of the town who were eligible to the office of commissioner of highways. This court held that it was not possible to tell for whom the electors intended the vote and the ballots should not have been counted for any one, citing *McCreery* v. *Burnsmeier,* 293 Ill. 43, as the basis for the holding. It does not appear from the opinion whether any Alexander other than William was a candidate or had been mentioned for the office of highway commissioner. The cases of *Talkington* v. *Turner, supra, Clark* v. *Robinson, supra, Kreitz* v. *Behrensmeyer, supra,* and *Constant* v. *Shockey, supra,* were not criticised, differentiated or overruled.

In *McCreery* v. *Burnsmeier, supra,* James E. McCreery and W. G. Burnsmeier were candidates for the office of. mayor of Mason City. That case is not in point here for the reason that no ballots were cast for either "McCreery" or "Burnsmeier," without a christian name. In that case the evidence showed that there were four male persons of the name of McCreery living within the limits of Mason City who were eligible to the office of mayor. The oldest and most prominent member of the family was John A. McCreery, who was commonly known as J. A. McCreery and conducted his business under that name. Prior to the election he and his son, J. R. McCreery, a well known business man in Mason City, were both frequently talked of as candidates for the office of mayor and many voters had expressed their intention of voting for each of them. J. R. McCreery had been asked to become a candidate for mayor at the election in question, and on election day some voters said they intended to vote for John McCreery. It was properly held that ballots cast for J. A. McCreery and for

J. R. McCreery should not be counted for James E. McCreery. The circumstances of this case are entirely different from the circumstances in *Sievers* v. *Hannah, supra,* and *McCreery* v. *Burnsmeier, supra.* In the instant case the evidence shows that Walter Davenport was the only Davenport who was a candidate for commissioner of highways and the only Davenport who was mentioned in that connection. The evidence shows that on March 17, 1928, in the afternoon, the republicans held a party convention for the purpose of nominating candidates for the town offices, at which convention Walter Davenport was nominated for commissioner of highways. A certificate of nomination was prepared, but it was not presented to the town clerk until Tuesday, March 20. The committeeman who presented it to him testified that he looked for the town clerk on Monday and could not find him. The town clerk refused to file the certificate, saying that it was presented one day too late. When the town clerk refused to file the republican certificate of nomination for the purpose of having the names of the republican candidates printed on the official ballot, hand-bills were then printed by certain persons interested in the candidacy of Walter Davenport for highway commissioner. In these printed hand-bills it was charged that his name and the names of other candidates on the republican ticket were wrongfully kept off the ballot by the democratic candidates, Gus Cray, Harry B. Hill and Elmer Irwin, the town clerk, and advertisements to the same effect were printed in the newspaper. These hand-bills were sent to all rural mail boxes in the township and distributed all over the city of Jerseyville, to business houses and residences alike. In them it was openly charged that Cray and other democratic candidates were using arbitrary power and had willfully refused to place the republican names upon the ticket. The hand-bills and newspaper advertisements contained sample ballots, with instructions with reference to writing the name of Walter Davenport

therein and how to properly mark the ballot. These hand-bills were tacked on trees and were thoroughly distributed throughout the town of Jersey. The citizens were aroused by the recitals in the hand-bills and the newspaper adver-tisements and on election day an unusually large vote was polled. There were many workers at the polls showing voters how to write in the names on the official ballot so as to vote for appellant. There were also a large number of automobiles used at the election for the purpose of hauling voters to the polls. That the candidacy of Walter Daven-port was widely known throughout the precinct is mani-fested by the fact that an inspection of the ballots showed that more than one hundred persons whose votes were not counted attempted to vote for Walter Davenport by writing his name upon the ballot without placing a cross in front thereof or writing it in the wrong place upon the ballot. Under these circumstances it was manifest that it was the intention of the voters who wrote the name "Davenport" upon the ballot without a christian name to vote for Wal-ter Davenport, and that the rules laid down in the cases of *Talkington* v. *Turner, supra, Clark* v. *Robinson, supra, Kreitz* v. *Behrensmeyer, supra,* and *Constant* v. *Shockey, supra,* should be adhered to in the instant case.

The county court should have counted the 21 votes cast for "Davenport" for appellant, and erred in not so doing. When these 21 votes are added to the 663 votes with which the county court credited him, he has a total vote of 684 as against 682 for appellee.

As appellee has assigned no cross-errors it will not be necessary to consider whether the other questions raised by appellant were well taken.

The decree of the county court is reversed and the cause remanded to that court, with directions to enter an order declaring appellant elected to the office of commissioner of highways of the town of Jersey.

*Reversed and remanded, with directions.*