JOHN A. THOMPSON, Contestant, Appellee, v. GLENN ROBERTS, Incumbent, Appellant.

No. 43234.

NOVEMBER 19, 1935.

Breese & Cornwell, for appellant.

Senneff, Bliss & Senneff, for appellee.

PARSONS, J.—This is an appeal from the district court of Cerro Gordo county, and arises over the election of a subdirector in the township of Mason in said county. Glenn Roberts is the incumbent and appellant, and John A. Thompson is the contestant and appellee. The election in question was held on the 11th day of March, 1935. The decision of the district court was in favor of appellee Thompson and against the incumbent Roberts, and Roberts appealed from the decision of the contest court.

There is no dispute in the evidence. Roberts was a school director for subdistrict No. 9 in Mason school township, Cerro Gordo county, Iowa, and on March 11, 1935, an election was held, to elect a director for the new term. Printed ballots were provided and used. These ballots were in the following form:

"BALLOT

For Sub-Director

(vote for one)

☐....................................."

In each instance, the ballot was handed to the voter by one of the judges, with the direction to place a cross in front of the name voted. There were 44 ballots cast. On each one the name of the person voted for was written in, and on every ballot except three a cross was placed in the square in front of the name. One of the three contained a check mark in the square; the other two contained no cross or other voting mark of any sort, and as the appellant says: "If these are to be counted, then appellee won. If they are not to be counted, the appellant won. That is the sole question involved." The judges tallied the votes as counted and the tally sheets showed 22 votes for each candidate. The appellant on Saturday following the election presented a certificate of election showing him to be elected, and asked the judges to sign it, which they did. One of the judges said she was busy and didn't read what she signed, and understood it to be merely a report of the election. Appellant then filed his qualification, and the board accepted the certificate. Appellee Thompson then went to the contest court. No question is raised as to the regularities of this, or these proceedings. The appellant then states in his brief: "The sole

question is whether a cross in front of the name is necessary to constitute a vote. Stated more directly, the question is: When the 43d General Assembly amended the law in 1929 to say that the applicable general election laws should apply to *all school elections,* did the Code sections 809 and 816, become controlling, thereby requiring a cross in front of the name voted for?''

Looking over the whole record, we are of the opinion that upon the answer to this question depends whether this case shall be affirmed or reversed.

The district court found for the appellee, giving a written opinion. This opinion was somewhat of a finding of facts, as well. It said:

''It appears there were 21 ballots cast for Glenn Roberts, all of the ballots having the cross in the square before the name of Glenn Roberts, named by the voter; there were 19 votes or ballots which contained the name of Thompson with the cross in the square before his name. There were three ballots for Thompson, two of them containing no mark in the square before his name, and one containing a line in the square before the name, and there was one illegible ballot.''

Therefore, the court found Roberts had 21 votes and Thompson 22 votes, and there is no dispute in the record as to this finding of the facts, and the attorneys in the trial of the case do not question the correctness of these facts.

Section 809 reads as follows:

''The voting mark shall be a cross which shall be placed in the circle at the head of a ticket, or in the squares opposite the names of candidates.''

Section 816 reads as follows:

''The voter may also insert in writing in the proper place the name of any person for whom he desires to vote and place a cross in the square opposite thereto. The writing of such name without making a cross opposite thereto, or the making of a cross in a square opposite a blank without writing a name therein, shall not affect the validity of the remainder of the ballot.''

Chapter 208 of the Code deals with the organization of school districts, and section 4124 of that chapter says:

"School corporations composed of subdistricts shall be called school townships, and shall be designated as the school township of (naming civil township), in the county of (naming county), state of Iowa."

The other school corporations designated in this section are the independent school district of (naming the city, town, or village), also rural independent school districts and consolidated school districts. These are the extent of the school corporations in the Iowa scheme of common schools.

Chapter 211-C1 of the Code was enacted by the 43d General Assembly. Section 4216-c1 provides for the regular election in each school corporation and in each subdistrict. The subdistrict could only apply to a school township. Section 4216-c4 speaks of nomination papers, the necessity of filing them, but none are provided for subdistricts, and none are necessary. Section 4216-c7 provides that the subdirector shall determine a suitable polling place, except that if there is no subdirector, the polling place shall be selected by the voter who posts the notices. Section 4216-c8 provides that in any school corporation where nomination for election to office is required, the secretary shall cause to be printed and delivered at the several polling places a sufficient number of ballots printed on plain, substantial paper of uniform quality, with no party designation or mark thereon. Such ballot shall contain in alphabetical order the names of all candidates for each office, filed as provided by law, and a blank line for each such officer to be elected. There shall be at the left of each name and each blank line a square, and there shall also be a direction to the voter as to the number of candidates to be voted for at said school election.

We are called upon to interpret the meaning of section 4216-c33, which is as follows:

"So far as applicable all laws relating to the conduct of general elections and voting thereat and the violation of such laws shall, except as otherwise in this chapter provided apply to and govern all school elections."

What is the application of the phrase "so far as applicable * * * except as otherwise in this chapter provided"? The chapter in which this is found, chapter 211-C1, does not provide for the arrangement of polling places in booths, as pro-

858

vided in section 743; nor for furnishing ballot boxes and supplies, as in section 746; nor for the form of ballot, as in section 760; nor for the county auditor controlling the printing, as in section 769; nor for the city clerk in certain instances controlling the printing, as in section 771; nor for delivery of ballots to the judges, as in section 773; nor for the method and style of printing ballots, as in section 775; nor for a number of other things specifically pointed out in chapter 40. There is no provision which prohibits the voter from taking a blank piece of paper and writing thereon the name of the man he is voting for as subdirector, the only purpose of the meeting being to elect a subdirector. We think under this showing that any ballot which is voted at a subdistrict meeting for a director, which plainly shows the intent of the voter, must be counted.

The very fact that the legislature has set school townships off in a class by themselves; that subdistricts are not school districts, but merely a division of a school district; that for election purposes the statutes specifically require in all school districts, except school townships, the nomination of candidates for office, the furnishing of ballots by the secretary, and it omits to do these things in reference to the election of a subdirector, clearly to our mind makes inapplicable the provisions of the statute cited and relied on in section 4216-c33. In speaking of the applicable laws, ''except as otherwise in this chapter provided'' apply to and govern school elections. The very provision of the chapter in requiring all school districts other than school townships and subdistricts to strictly observe the certain designated rules which are about the same as in the general elections in such school districts, and excludes the school townships, shows that it must have been in the mind of the legislature not to disturb the previous methods of voting in those townships. What is the purpose of balloting? The purpose of balloting is to ascertain the intent of the voter. All the authorities on elections so hold. The legislature, of course, has the right to prescribe in what particular manner the vote shall be made, but in the absence of prescribing a particular manner in which the vote shall be made the only guide is and can only be the intent of the voter.

Section 816 of the Code, concerning the writing in of names and placing of a cross in the square, applies, and applies only, to the official ballots. There being no official ballot for a sub-

district, this section does not apply. Quoting from the opinion in the district court, it says:

"Had the legislature desired to make the provisions as to the marking of ballots applicable to the annual subdistrict elections within school townships, some provision would certainly have been made for the kind of a ballot to be used and until that provision is made, any ballot which signifies the intention of the voter as to what person he intends to vote for is sufficient." We agree with this.

So, we are of the opinion that for the reasons pointed out, the decision of the district court should be, and is hereby, affirmed.—Affirmed.

KINTZINGER, C. J., and HAMILTON, POWERS, DONEGAN, MITCHELL, and ALBERT, JJ., concur.