JACK BECK, appellant, v. ROSCOE E. COUSINS, appellee.

No. 50183.

(Reported in 106 N.W.2d 584)

December 13, 1960.

Alfred A. Beardmore, of Charles City, for appellant.

W. V. Clark, of Fayette, for appellee.

Peterson, J.—This is an action in equity involving an election contest. On November 3, 1959, a municipal election was held in the town of Fayette, in Fayette County. R. E. Cousins had filed for mayor in accordance with statutory provision and his name appeared in printed form on the ballot. Approximately three weeks before the election Jack Beck announced as a write-in candidate for the same office. After the election, the election officials declared Mr. Cousins elected. Mr. Beck filed contest, in accordance with statute. After counting the ballots and ruling on some contested ballots the contest board ruled that Mr. Cousins had received 177 votes and Mr. Beck 174 votes. Contestant filed petition in the district court of Fayette County appealing from the findings of the contest board. Upon trial in the district court the trial court sustained the contest board. Contestant has appealed.

I. There were quite a number of ballots under discussion and in controversy in connection with the proceedings before the contest board and the trial court. On appeal, however, appellant cites error as to only eleven ballots which were rejected by the board and the trial court. Since this case is triable in equity, and de novo, appellant should have alleged "Propositions relied on for reversal." R. C. P. 344(a)(3). We will consider the allegations as propositions. The basis on which the ballots were rejected was as follows:

Ballots Exhibits C-1 and C-2 were voted by write-in vote for "Mr. Beck." Ballots Exhibits C-3, C-4, C-5, C-6 and C-7 were voted by write-in votes by use of the single word "Beck." On all ballots the voter had properly placed the cross in the square in front of the name voted.

On the ballots Exhibits D-5 and D-6 the voter had properly voted for "Jack Beck" by write-in vote for mayor. In each case the ballots were voted by write-in vote for Gil Cooper for councilman and also for park commissioner.

With reference to the ballot Exhibit D-7 the voter properly voted for Jack Beck by write-in vote for mayor, but at about the center of the ballot where the electors were voting for councilmen the elector had written on a blank line a word which is not very legible, but which appears like "harchert." There was a candidate for councilman on the printed ballot whose name was "Virgil Borchert." The elector voted by cross for both.

The ballot Exhibit D-8 was properly voted for Jack Beck by write-in vote for mayor. One of the candidates for councilman and whose name was printed on the ballot was Charles R. Lewis. This elector ignored the printed name of Charles R. Lewis and did not place a cross in the square in front of that name, but by write-in he wrote "Charles R. Lewis" on one of the blank lines for councilmen and placed a cross in the square in front of the write-in name.

As to the first seven ballots the trial court held they did not constitute votes for "Jack Beck", the candidate for mayor. As to the other four, the court rejected them as containing distinguishing or identifying marks. The parties stipulated at commencement of trial there were 177 uncontested votes for R. E. Cousins, and 172 for Jack Beck.

In the interpretation of a disputed ballot the primary consideration is to arrive at the intent of the voter. This is subject to the conditions that the ballot must not be marked contrary to statutory ballot provisions, and must not have placed on it any distinguishing marks or writing. Brown v. McCollum, 76 Iowa 479, 41 N.W. 197, 14 Am. St. Rep. 228; Thompson v. Roberts, 220 Iowa 854, 858, 263 N.W. 491, 493; Wright v. Marquis, Tex. Civ. App., 255 S.W. 637; Johnston v. Peters, Tex. Civ. App., 260 S.W. 911; Appeal of McCracken, 370 Pa. 562, 88 A.2d 787.

This court has spoken on the matter of intent of a voter in Thompson v. Roberts, supra, in the following language: "What is the purpose of balloting? The purpose of balloting is to ascertain the intent of the voter. All the authorities on elections so hold. The legislature, of course, has the right to prescribe in what particular manner the vote shall be made, but in the absence of prescribing a particular manner in which the vote shall be made the only guide is and can only be the intent of the voter."

Extraneous evidence is admissible, if necessary, to determine whether a ballot expresses the true intent of the voter. In admitting such evidence there are two matters which have been recognized as important. One is as to whether or not there was another Mr. Beck in the town of Fayette who could be mistaken for the candidate, or another Mr. Beck on the ballot who was a candidate for any office. The other is the extent and vigor of the campaign carried on by contestant, which would bring his name to the attention of the voters.

In Brown v. McCollum, supra (at pages 484, 485 of 76 Iowa), this court approved the following statement contained in the instructions of the court to the jury: " '* * * it will be your duty to find and determine * * *. The intention of the voter, if it can be ascertained from the ballot itself, or from the ballot examined and considered in the light of all the facts and circumstances developed in the trial, should be respected, and the ballot counted for the person for whom the voter intended it.' "

With reference to his campaign the record discloses that

plaintiff testified he campaigned for about 3½ weeks before the election. News stories of his candidacy appeared in the Fayette paper and also in the Oelwein Daily Register, which is a paper of general circulation in the town of Fayette. Mr. Beck mailed campaign literature to between three and four hundred citizens of Fayette advertising in bold type the fact that he was a write-in candidate for mayor and that Gilbert Cooper and Harold Baker were write-in candidates on the ticket for councilmen. A bold-faced campaign advertisement was posted in business places in Fayette and 500 copies were distributed. The week before the election there was inserted an ad in the Fayette and Oelwein papers soliciting votes for Jack Beck as a write-in candidate. About three or four hundred sample ballots were distributed, showing how to vote by write-in for Jack Beck. All this activity on behalf of Mr. Beck constituted circumstances emphasizing the fact that his name became well known in the town as a candidate for mayor. The evidence shows there was no other candidate by the name of Beck campaigning for mayor nor on the ticket as a candidate.

The record discloses that there was no other Mr. Beck living in Fayette on the date of the election. The only other person by the name of Beck was his wife. There had been a student at Upper Iowa University, which is located in Fayette, by the name of Dilman Beck, but he left town before election. There had also been a professor at the University by the name of Eugene Beck who had previously lived in Fayette, but who apparently had not returned for the college year starting in the fall of 1959.

II. The first seven ballots, Exhibits C-1 to C-7 inclusive, can be considered together. Did the seven voters, two of whom wrote "Mr. Beck" on their ballots, and five wrote "Beck", intend to vote for Jack Beck, the write-in candidate for mayor?

An identical situation has been considered by this court in only one case. Brown v. McCollum, supra. The case is old, having been announced on January 16, 1889. It has never been overruled, and although election contest statutes have been amended three times since 1889, 24th G. A. in 1892; 28th G. A. in 1900; and 40th G. A. Special Session, the legislature did not adopt any new measure overruling this decision.

When the Brown case was decided contests were triable at law. This was changed by statutory enactment when the legislature provided, as now appears, in section 62.20: "* * * The court shall hear the appeal in equity and determine anew all questions arising in the case."

The principles of law in the Brown case were established by the instructions of the trial court to the jury. The instructions were approved by this court, in an opinion by Judge Rothrock.

The name of the plaintiff was "Ella S. Brown." As a part of the facts the court said at page 484 of 76 Iowa: "In erasing the name of 'McCollum' and writing that of 'Brown', in some instances no Christian name is written,—it is simply 'Brown.' In some of the tickets where her name is erased and the defendant's name is written, the Christian name of the defendant is also omitted. The jury counted these ballots for the party whose name was thus written."

The substance of the court's instructions, which are relevant to this case, is contained in the following statements (page 485 of 76 Iowa): " 'If the ballot expresses the intention of the voter beyond a reasonable doubt, it is sufficient, without regard to technical inaccuracies in the form of the ballot. The language and form of the ballot should be considered, and construed in the light of all the facts connected with the election; as, for instance, the office to be filled, the names of the candidates voted for, and *all the other facts of a general public nature surrounding the election, of which the voter may be presumed to have been advised, and in view of which he may be presumed to have expressed his franchise.*' " (Emphasis ours.)

Appellee explains the Brown case by saying it was announced under the old statutes which "placed the intent of the voter ahead of technicalities." The intent is still the primary factor, provided it can be established by a preponderance of the evidence.

In the instant case, in view of the fact that there was no other Mr. Beck in the town, and that Jack Beck engaged in a multiplicity of activities to bring his candidacy before the public, no doubt remains that in this somewhat small commu-

nity of about 1500 the seven voters who voted for "Mr. Beck" or "Beck" intended to cast their ballot for Jack Beck, the write-in candidate for mayor.

Although the question involved has only been considered in one case in Iowa, it has received consideration in many other states. Rice ex rel. Potter v. Durfee, 43 R. I. 407, 113 A. 392; Johnston v. Peters, Tex. Civ. App., 260 S.W. 911; Rollyson v. Summers County Court, 113 W. Va. 167, 167 S.E. 83; In re Bennett v. Board of Elections, 10 Misc.2d 804, 169 N. Y. S.2d 222; Kreitz v. Behrensmeyer, 125 Ill. 141, 17 N.E. 232, 8 Am. St. Rep. 349; Gulino v. Cerny, 13 Ill. 2d 244, 148 N.E.2d 724; Cray v. Davenport, 333 Ill. 375, 164 N.E. 825; Appeal of McCracken, 370 Pa. 562, 88 A.2d 787; Newton v. Newell, 26 Minn. 529, 6 N.W. 346; Murray v. Floyd, 216 Minn. 69, 11 N.W.2d 780.

Appellant cited these supporting cases, and appellee's observation concerning them is that the difference in statutes in the various states should be taken into consideration. It is true that some states have more definite statutes as to names on ballots than Iowa, but this is not correct as to the specific question of use of surname only. This matter is decided in the various states only by judicial pronouncement.

In Rice ex rel. Potter v. Durfee, supra, the name of the write-in candidate was Frederick E. Durfee. There were two ballots cast for "Mr. Durfee." The question before the court was the same as in the case at bar. Should these two ballots count? The evidence showed that Durfee was the only candidate for the office by that name. The court ruled that the "Mr. Durfee" ballots should be counted.

In Johnston v. Peters, supra, Johnston was a write-in candidate. Some voters used simply the word "Johnston." The court said: "[The] appellant was the only candidate for the office of sheriff who bore the name 'Johnston,' or any similar name, and he and Peters were the only candidates for that office. And where the voter wrote into the appropriate place on the ballot the name 'Johnston,' or any other name having a similar appearance or sound, the presumption is that the voter was voting for the candidate and not someone else, notwithstanding the name was misspelled or wrong initials were given."

In Rollyson v. Summers County Court, supra, the write-in candidate was Prince E. Rollyson. Some voters simply wrote "Rollyson." The court said (at page 174 of 113 W. Va.): "When an individual is referred to by the surname of a family, the man of the house is the individual to whom reference is ordinarily made, and of this matter of general knowledge courts take judicial notice. In consequence we say that when a voter of the Hinton Independent School District voted for 'Rollyson' for membership of the school board, Prince E. Rollyson was the individual for whom the vote was intended."

In In re Bennett v. Board of Elections, supra, Bennett was a write-in candidate. On some of the ballots only the surname "Bennett" was written in. The evidence disclosed that Bennett was the incumbent and the only write-in candidate for the office and that he had actively campaigned. The court held these votes should be counted for Bennett.

In Clark v. Robinson, 88 Ill. 498, E. E. Clark and William E. Robinson were the only candidates for the office. Both were write-in candidates. Some voters cast their ballots using only the surname "Clark." Others cast their ballots for "Robertson" and some for "Robin." The court held that the Clark ballots should count for E. E. Clark and that the Robertson and Robin ballots should count for William E. Robinson.

In Kreitz v. Behrensmeyer, supra, the name of one of the candidates was Charles F. A. Behrensmeyer. The evidence disclosed that there were no other persons by the name of Behrensmeyer in the county, and there was no other candidate for election by that name. The court held that where the ballots only disclosed the surname "Behrensmeyer" they should count for Charles F. A. Behrensmeyer.

In Cray v. Davenport, supra, Walter Davenport was a write-in candidate for office. As in the case at bar a number of ballots were marked "Davenport" or "Mr. Davenport." The Illinois Supreme Court held that where Walter Davenport was the only candidate for office by that name the ballots marked "Davenport" or "Mr. Davenport" should be counted for him.

In Appeal of McCracken, supra (at page 566 of 370 Pa.), the court stated: " 'A ballot may be counted which contains a

candidate's surname only, although there are other persons in the county having the same surname, it being shown that there was no other person of such name who was a candidate for the same or any other office; and so also if only the middle name of the candidate is wrong, or if the first name is abbreviated, or if the wrong initials are used.' "

In the early Minnesota case of Newton v. Newell, supra, the court said at page 540 of 26 Minn.: "With reference to the name by which a candidate may be sufficiently designated, we regard the following rules to be correct: If, for a certain office, there is but one person running of a given name, say the name of Frank E. Newell, a ballot for 'Newell' simply, without any Christian name or initial thereof, will pass, and should be counted for Frank E. Newell * * *."

In the later Minnesota case of Murray v. Floyd, supra (at page 78 of 216 Minn.), it was stated: "Likewise, where there is no other candidate with the same surname, only the surname of the candidate may be used."

As a general statement with reference to the situation in the many states where this subject has been given judicial consideration we find the following statement in 29 C. J. S., Elections, section 180, on page 265: "* * * Generally, however, if the voter's intention can be determined, that intention will not be defeated because of an irregularity in the writing of the candidate's name. Thus ballots have been held not invalidated * * * where there is a clear relation between the appearance or sound of the name written in and that of the candidate and only one man of a particular name is a candidate for the office; or where the voter omitted the candidate's initial or employed a wrong initial, or wrote the candidate's initials in place of his given name, *or wrote only the candidate's last name,* there being no other candidate of the same name to be voted for." (Emphasis ours.)

██ ██ III. The two ballots, Exhibits D-5 and D-6, were correctly voted for Jack Beck for mayor. However, both of these electors voted for "Gil Cooper" for councilman and also for park commissioner. The trial court rejected them on the basis that such voting constituted "identifying marks."

This leads us to the question, what is a distinguishing or identifying mark? It is one which will enable a person to separate and single out a ballot from others cast at the election. Fullarton v. McCaffrey, 177 Iowa 64, 71, 158 N.W. 506, 508; Parker v. Hughes, 64 Kan. 216, 67 P. 637, 56 L. R. A. 275, 91 Am. St. Rep. 216; Church v. Walker, 10 S. D. 450, 74 N.W. 198.

Judge Ladd discussed the question at some length in the Fullarton case as follows: "What is an identifying mark is not defined in our statute, and whether any mark on a ballot other than the cross authorized to be placed thereon was intended as a means of identifying such ballot must be determined from the consideration of its adaptability for that purpose, its relation to other marks thereon, whether it may have resulted from accident, inadvertence, carelessness or evidenced design, and the similarity of the ballot with others cast and the like. In other words, the court, in deciding the issue as to whether the ballot has been marked so as to be identified by another, may and should consider all the evidence and circumstances bearing thereon, precisely as in passing on any other issue."

The two electors had a legal right to vote for the same man for two offices. It is presumed they so voted in good faith. Whether, if the person was elected to two offices, he could qualify for both would be decided by statute.

In Hansen v. Lindley, 152 Kan. 63, 77, 102 P.2d 1058, 1069, the court said: "The next ballot we shall consider is C 3. Hansen argues that this ballot should not be counted because the voter wrote in the name of Paul Turner for township treasurer and put an X mark in the square and also wrote the name of Paul Turner as a candidate for constable and put an X mark in the space provided. This appears to be an honest effort on the part of the voter to vote for the same man for two different offices. This is not forbidden by any statute and was not done to identify the ballot. The ballot should have been counted."

The action of the two electors in the instant case cannot be construed to create an identification of their ballot.

IV.   Decision as to Exhibit D-7 is unnecessary.

V.   The elector who voted the ballot Exhibit D-8 voted

for Jack Beck for mayor. One of the candidates for alderman whose name was printed on the ballot was Charles R. Lewis. Instead of placing a cross in the square in front of Mr. Lewis' printed name, he wrote "Charles R. Lewis" in the blank under councilmen and placed a cross in the square in front of the written name. It was a useless gesture, but cannot be construed as a distinguishing mark on the ballot.

In approving a similar ballot, Roberts v. Bope, 14 N.D. 311, 314, 103 N.W. 935, 936, said: "It is urged that, inasmuch as the contestee's name already appeared upon the official ballot in the column of 'Individual Nominations,' the electors could not lawfully indicate their choice by writing or pasting his name upon the ballot elsewhere, but must mark it in the column where it was printed. * * * The prohibition of our statute against the name of a candidate appearing more than once upon the ballot refers to the official ballot as printed and delivered to the elector, and not the ballot as marked and returned by him to the election officer."

A few other ballots were under discussion before the trial court and the court considered them in its decree. Some were voted for Cousins and some for Beck. Appellant did not raise any question about them in his propositions for reversal, so we will not discuss them. Suffice to say that counting the reasonably acceptable ballots between the two candidates as voted, the result as we decide herein would not be changed.

Our decision is that ten ballots be added to the undisputed 172 ballots of Jack Beck, making his total vote 182. Since R. E. Cousins had only 177 votes, Jack Beck was elected mayor.

The decision and decree of the trial court is reversed.— Reversed.

All JUSTICES concur.