# IN THE SUPREME COURT OF IOWA

No. 12 / 05-1047

Filed June 1, 2007

**RAYMOND TAYLOR, KEITH COMLEY,**
and **VIVIAN EDGERTON**,

> Appellants,

vs.

**CENTRAL CITY COMMUNITY SCHOOL DISTRICT**,

> Appellee.

---

Appeal from the Iowa District Court for Linn County, Douglas S. Russell, Judge.

Appeal from a decision by the district court upholding the decision of the contest court to not count four questionable ballots in a special election. **AFFIRMED.**

Wallace L. Taylor of Cedar Rapids, for appellants.

Ivan T. Webber of Ahlers & Cooney, P.C., Des Moines, for appellee.

**CADY, Justice.**

In this case we must primarily decide whether four contested ballots in a special election should be counted. The contest court and district court determined the ballots should not be counted. We affirm.

## I. Background Facts and Proceedings.

The Central City Community School District proposed to refurbish its school building and construct a vocational education building. The plan required the issuance of general obligation bonds and a tax levy to pay for the improvements. On July 13, 2004, a special election was held to put the issue before the voters. Measure A asked the voters to authorize the board of directors of the school district to contract for indebtedness and issue general obligation bonds for the improvements in an amount not to exceed $4,605,000. Measure B asked the voters to authorize the school board to levy a tax to pay for the bonds.

The official paper ballot asked the voters to mark their vote for each measure by filling in an oval target located to the immediate left of the words "Yes" and "No." The ballot's notice to voters, or instructions, specifically read:

> (Notice to Voters: For an affirmative vote on any question upon this ballot, mark the word "YES" like this ●. For a negative vote, make a similar mark in the box marked "NO")

After a voter marked the paper ballot, it was mechanically scanned and counted.

An affirmative vote of sixty percent was needed for each measure to pass. *See* Iowa Code § 75.1 (2003).[1] Measure A passed by an

---

[1] All citations or references to the Iowa Code refer to the 2003 edition in effect at the time of the election in this case, unless otherwise noted.

uncontested margin. Measure B passed with 545 "Yes" votes and 362 "No" votes. The margin in favor of the measure was 60.09%.

The opponents of the measures requested a recount, and a recount board was appointed pursuant to Iowa Code section 50.48. The recount board determined the voting machine failed to properly read four Measure B votes. These four ballots were marked as follows:

| First Ballot | Second Ballot | Third Ballot | Fourth Ballot |
|---|---|---|---|
| ◯ YES | ◯ YES | ◯ YES | ◯ YES |
| ◯ ● | ◯ N● | ◯ NO | ◯ N● |

The recount board rejected the first ballot after finding the voter's intent was unclear, and counted the remaining three disputed ballots as "No" votes. This determination resulted in only 59.89% of "Yes" votes. The Linn County Board of Supervisors then certified this result on July 28, 2004. As a result, Measure B failed to pass.

On August 13, 2004, twenty-eight eligible voters in the district filed a notice of intent to contest the election and a request to convene a contest court pursuant to Iowa Code sections 57.1(*b*) and 62.5. The contest court was subsequently convened pursuant to Iowa Code section 57.7.[2] It determined by a 2–1 vote that the four disputed ballots should not be counted. As a result, the original count was reinstated and Measure B passed.

On September 16, 2004, three members of the opposition group (hereinafter referred to as Taylor) filed a petition in district court. The

---

[2]Section 57.7 requires the contest court to consist of three members. One member must be "designated by the petitioners who are contesting the election," and another must be "designated by the county commissioner of elections to represent the interests adverse to those of petitioners." Iowa Code § 57.7. Finally, a third member is "chosen jointly by the designees of the petitioners and of the commissioner." *Id.*

action was brought against the school district and asked the district court to reverse the decision of the contest court.

The school district filed a motion to dismiss. It claimed Taylor had no right to petition the district court for relief, and could only challenge the contest court decision by filing an appeal to the district court. In absence of the filing of a notice of appeal, the school district claimed the district court had no jurisdiction to grant relief.

The district court overruled the motion and eventually considered the merits of the petition. It found the intent of the voters who cast the four disputed ballots could not be shown, and the voters failed to properly mark the ballots within the voting target. Consequently, the district court held the contest court correctly decided that the four ballots should be rejected. As a result, Measure B passed. Taylor has now appealed the district court's decision.

## II. Standard of Review.

Our standard of review in an appeal from a district court decision in an election contest is de novo. *Devine v. Wunderlich*, 268 N.W.2d 620, 623 (Iowa 1978) ("Appeal lies from the contest court to district court which hears the appeal in equity and determines anew all questions in the case. Hence our review is also de novo." (Citation omitted.)).

## III. Jurisdiction.

The right to contest an election is only conferred by statute, and contestants must strictly comply with the provisions of the statute in order to confer jurisdiction. *Bauman v. Maple Valley Cmty. Sch. Dist.*, 649 N.W.2d 9, 13 (Iowa 2002) ("When a statute prescribes a procedure for review, that procedure must be strictly followed to confer jurisdiction."). Thus, contestants are limited to the scheme provided by

the legislature. This procedure includes proceedings before the contest court, as well as appeals to district court. *See de Koning v. Mellema,* 534 N.W.2d 391, 394 (Iowa 1995) ("The rule is quite generally recognized that to initiate special proceedings, such as election contest proceedings, the statutory provisions necessary to confer jurisdiction must be strictly complied with by the contestants.").

There are numerous statutory procedures that must be followed to convene a contest court in a disputed election. *See id.* at 394–95 (describing the procedure outlined in Iowa Code chapters 57 and 62). These procedures are largely unique to the election process, and they are generally not supplemented by our rules of civil procedure applicable to courts. *Bauman,* 649 N.W.2d at 15–16 (declining to apply the Iowa rules of civil procedure to election contests). Yet, when it comes to the judicial review process following a decision by a contest court, Iowa Code section 62.20 is the only statutory provision that provides for an appeal of contest court decisions regarding public measure elections. *See* Iowa Code § 62.20. Moreover, section 62.20 is noticeably generic, and untenanted by directions beyond the procedures for a bond to stay execution of the contest court judgment. *See id.* The statute simply permits a "party against whom judgment [was] rendered [to] appeal within twenty days to the district court." *Id.* The district court is then required to "hear the appeal in equity and determine anew all questions arising in the case." *Id.*

The school district takes the position that the appeal is a carefully regulated process that must be strictly followed to confer jurisdiction on the district court. It offers the detailed procedures under our court rules applicable to appeals to supplement the vagueness under the statute,

beginning with the fundamental requirement of the filing of a notice of appeal with the court that rendered the judgment. *See* Iowa R. App. P. 6.6 ("An appeal . . . is taken and perfected by filing a notice with the clerk of the court where the order, judgment, or decree was entered . . . ."). While this approach offers some appeal, it does not find support from the language of the statute. In the same way as we strive to uphold those legislative requirements written into the statute through strict compliance, we must not defeat the legislative process by imposing requirements where none exist. *See, e.g., Eysink v. Bd. of Supervisors,* 229 Iowa 1240, 1244, 296 N.W. 376, 378 (1941) ("This court has no power to write into the statute words which are not there."). For that reason, we have refused to supplement the statutory requirements governing election contests with the procedural requirements applicable to courts of law. *See Bauman,* 649 N.W.2d at 15–16 (refusing to apply the Iowa rules of civil procedure to election contests, except where the rules have been expressly endorsed). Moreover, the issue we confront is only whether the district court acquired jurisdiction to decide the controversy based on the procedure employed by Taylor.[3]

It is clear that Taylor invoked the jurisdiction of the district court for the purpose of appealing the decision of the contest court. Taylor did not commence an independent action to dispute the results of the election. Instead, he properly commenced the action through a contest court, and his petition in district court indicated he was pursuing the matter as an appeal "pursuant to" section 62.20, and in doing so he

---

[3]The school district offers many practical reasons for supplementing section 62.20 with our rules of appellate procedure, including the benefit of filing a formal notice of appeal. We do not reject the appeal procedure suggested by the school district as a possible method to appeal a contest court decision. Instead, we hold the procedure used by Taylor in this case was sufficient to perfect an appeal and confer jurisdiction on the district court.

asked the court to reverse the decision of the contest court. Under the circumstances, we find the filing of this petition was sufficient to meet the statutory requirements for making an appeal.

### IV. Disputed Ballots.

A comprehensive set of rules and procedures govern elections in Iowa. *See generally* Iowa Code chs. 39–63A (2007); *see also* Iowa Code ch. 277 (2007) (providing the procedure for school elections). These provisions not only apply to general elections, but also to school elections. Iowa Code section 277.2 allows a school board to call a special election to vote on issues such as the one involved in this case. *See Bauman*, 649 N.W.2d at 12 ("Special elections may be called irregularly to decide primarily financial and school property issues." (citing Iowa Code § 277.2 (2001))). Additionally, chapter 277 directs that "[t]he provisions of chapters 39 to 53 shall apply to the conduct of all school elections." Iowa Code § 277.3.

Chapter 49 specifically addresses the form of ballots to be used in public measure elections. Iowa Code section 49.45 requires the ballots to ask the question, "Shall the following public measure be adopted?" *Id.* § 49.45. The specific public measure must then be identified, followed by two boxes or targets that allow the voter to answer the question by marking the box or target identified "Yes" or by marking the box or target identified "No." *Id.* The public measure ballots must additionally include a notice as follows:

> [Notice to voters. To vote to approve any question on this ballot, make a cross mark or check in the target before the word "Yes." To vote against a question make a similar mark in the target preceding the word "No."]

*Id.* § 49.47. Section 49.47 also instructs officials to adapt the notice to voters "to describe the proper mark where it is appropriate." *Id.*

There is no claim that the form or content of the ballot in this case did not conform to our statutory requirements. *See, e.g., Harney v. Clear Creek Cmty. Sch. Dist.*, 261 Iowa 315, 321, 154 N.W.2d 88, 92 (1967) (requiring ballot to be in substantial compliance with requirements in statute); *Headington v. N. Winneshiek Cmty. Sch. Dist.*, 254 Iowa 430, 438–39, 117 N.W.2d 831, 836–37 (1962) (same). Instead, the question is whether the voting mark on the disputed ballots complied with the requirements of our statutes. Section 49.46 requires the voter to "designate a vote by making the appropriate mark *in the voting target.*" Iowa Code § 49.46 (emphasis added). The statutes indicate an appropriate mark may be that which is indicated in the notice or instructions, or a check mark or an "X." *See id.* §§ 49.46, 49.92. Thus, the voters in this case were required to mark their ballots by placing an "X," checking, or filling in the oval target next to the word "Yes" or "No."

While specific sections indicate how a public measure election ballot is to be marked, there is no specific section that deals with counting or rejecting voting marks on public measure ballots. There is a general section that deals with counting ballots in an election, but this section primarily refers to elections involving candidates, rather than public measures. *See id.* § 49.98 (entitled "Counting ballots"). The school district argues section 49.98 prohibits the four ballots from being counted in this case.

Under section 49.98 at the time of this election,[4] a ballot was required to "be rejected if marked in any manner other than authorized in sections 49.92 to 49.97." *Id.*; *see Beck v. Cousins*, 252 Iowa 194, 197, 106 N.W.2d 584, 586 (1960) ("In the interpretation of a disputed ballot the primary consideration is to arrive at the intent of the voter. This is subject to the conditions that the ballot must not be marked contrary to statutory provisions, and must not have on it any distinguishing marks or writings."). Section 49.92 governs voting marks. While it was clearly drafted by our legislature with elections involving political candidates in mind, it is consistent with the requirements of a voting mark for public measures. *Compare* Iowa Code § 49.46 (describing the voting marks required for public measure elections), *with id.* § 49.92 (describing voting marks for candidate elections). The statute contemplates that a ballot will include voting instructions to "describe the appropriate mark to be used by the voter," and that the "mark shall be consistent with the requirements of the voting system in use in the precinct." *Id.* § 49.92. Additionally, it states the voting mark used on paper ballots may be a cross or check "which shall be placed in the voting targets opposite the names of the candidates." *Id.* Finally, the statute provides that marks made by instruments other than a black lead pencil are generally permitted. *Id.*

It is clear the provision in section 49.98 governing the rejection of a ballot marked in an unauthorized manner also applies to public measure ballots that are marked contrary to the mandatory provisions of the law.

---

[4]New legislation went into effect shortly after the results of the election in this case. *See* 2004 Iowa Acts ch. 1083, § 37 (codified at Iowa Code § 49.98 (2005)) (removing the phrase "[a]ny ballot shall be rejected if it is marked in any other manner than authorized in sections 49.92 to 49.97"). We express no opinion how this legislative change may affect the result in this case or future cases.

While section 49.98 does not reference section 49.46 dealing with public measure voting marks, it requires the rejection of voting marks that are unauthorized marks under sections 49.92 through 49.97. *Id.* § 49.98. We see no difference between the basic voting mark requirements in section 49.46 and section 49.92. Both require the use of an appropriate mark, which may include the use of a check or cross. *See id.* §§ 49.46, 49.92. Moreover, chapter 277—which allows the board to conduct the special election in this case—directs that those sections of chapter 49 are applicable to this election. *See id.* § 277.3 ("The provisions of chapters 39 to 53 shall apply to the conduct of all school elections . . . .").

Generally, a vote is counted in an election if the voter affixed any mark to the ballot that "fairly indicates" an intent to vote for a particular candidate or measure. *See Devine*, 268 N.W.2d at 623. However, this rule does not apply if the voter violates "a mandatory provision of the election law" in casting the ballot. *Id.* Thus, the intent of a voter to vote for or against a public measure is the prevailing issue only if the voter has followed the legal requirements in marking the ballot.

The school district argues the four ballots in this case violated the election laws because the voters failed to mark the ballot according to the voting instructions or notice. Even so, the school district argues the marks placed on the ballots do not "fairly indicate" the intent to vote either "Yes" or "No" on Measure B.

In this case, the four disputed ballots were neither marked as required by the statute or as directed by the instructions on the ballot. The statutes require that voting marks on paper ballots be placed in the voting targets. Likewise, the instructions or notice on the ballot directed the voter to mark the ballot by placing the voting mark in the voting

target. To be counted, a voting mark must be substantially within the target. *Frakes v. Farragut Cmty. Sch. Dist.*, 255 Iowa 88, 91, 121 N.W.2d 636, 638 (1963). In all four ballots, the voters failed to enter any mark of any kind in the target opposite the word "Yes" or "No." This violated sections 49.46 and 49.92, and under section 49.98 the votes cannot be counted.

We recognize the possibility that the voters in this case intended to vote "No" on each ballot, particularly on the three ballots where the voters filled in the letter "o" in the word "No" and left the oval target immediately to the left of the word "No" blank. However, our statutes do not permit such intent to prevail when the ballots were marked in an unauthorized manner. Importantly, this conclusion does not foreclose the necessity of determining intent in certain cases. There are times when a voting mark does not strictly meet the ballot instructions or statutory requirements, but nevertheless is marked in such a way that it is not unauthorized. *See Beck*, 252 Iowa at 197, 106 N.W.2d at 586 (recognizing the intent of a voter is subject to the requirements of our statutes); *Devine*, 268 N.W.2d at 628 ("The voter's intention, if it can be ascertained, should not be defeated or frustrated by the fact the name of the candidate is misspelled, or the wrong initials were employed, or some other slightly different name of similar pronunciation or sound has been written instead of the actual name of the candidate intended to be voted for."). In these cases the intent of the voter must prevail if it can be determined. That is not the case here, however, as none of the markings were made inside the "No" target. In such a case, the mark is unauthorized and uncountable. While "[t]he primary test of validity is whether the voter's intent is sufficiently shown," this intent cannot be

derived from ballots that are marked inconsistently with the voting instructions provided on the ballot and the marking requirements of the statute. *Devine*, 268 N.W.2d at 628.

We also recognize the goal in an election contest is to give effect to the venerable democratic right to vote. It is not to disenfranchise the voter. *See, e.g., id.* at 623 ("The right to vote is a fundamental political right. It is essential to representative government. Any alleged infringement of the right to vote must be carefully and meticulously scrutinized." (Citation omitted.)). Yet, our legislature has established certain basic voting requirements that we are obligated to enforce in the absence of a successful constitutional challenge to the statute.

**V. Conclusion.**

We conclude the district court had jurisdiction in this case. We affirm the decision of the district court that the ballots in dispute should not be counted.

**AFFIRMED.**