## JOHN G. KEENAN *vs.* WILLIAM E. BRIDEN *et al.* AS BOARD OF CANVASSERS OF THE CITY OF PAWTUCKET.

### DECEMBER 27, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)   Elections.   Ballots.*

In passing upon the validity of ballots cast for a candidate whose name was not printed upon the official ballot, the circumstances surrounding the election should be taken into consideration.

*(2)   Elections.   Ballots.   Address of Candidate.*

A voter desiring to vote for a candidate other than those whose names appear upon the official ballot, is not required to insert the residence of such person; under Gen. Laws, cap. 11, § 43, and where there could be no uncertainty as to the person for whom the vote was cast the court will not impose such requirement, but it might occur at some election that without the addition of a residence it would be impossible to determine the voter's choice.

*(3)   Elections.   Ballots.   Distinguishing Mark.*

Under the circumstances of the election before the court, the addition of the residence in connection with the name of a candidate written by the voter upon the ballot, will not vitiate the ballot as constituting a distinguishing mark, and should be treated as surplusage.

*(4)   Ballots.   Elections.*

As the printing of parallel lines forming a "box" for the voter to write in the name of a candidate, upon the ballot, is not provided for by statute, the fact that the address of the candidate was written outside the "box" does not vitiate the ballot.

*(5) Elections. Ballots.*

Under cap. 11, Gen. Laws, permitting a voter to cast his ballot for a candidate other than those whose names appear upon the official ballot by writing the name "in the blank or right-hand column under the proper title of office" while the voter is not restricted to the "box" prepared for such purpose, he should comply substantially with the statutory requirement.

*(6) Elections. Ballots.*

While it is not necessary for a voter to make a cross at the right of a name which he has written in the blank or right-hand column of his ballot, the making of such cross does not render the ballot invalid.

*(7) Elections. Ballots.*

Where it appeared that petitioner a candidate for an elective office had been nominated for such office but on account of not complying with statutory requirements, his name was not printed upon the official ballots, but the electors had been notified by advertisements and otherwise to write his name with street and number of his residence upon the ballot, the address in the circumstances of the case being treated as surplusage, the fact that a voter wrote the wrong number of the street upon the ballot did not vitiate the ballot, in view of the fact that it appeared that no person of the name of petitioner resided at such address and the addition of the wrong address did not tend to create any uncertainty as to the identity of the person whose name was written.

(b) in view of the circumstances of the case the addition of "Mr." before petitioner's name or "Pawtucket, R. I.," or "City" after his name should be treated as surplusage.

(c) Ballots on which the voter wrote petitioner's name with a number on a street other than the street where petitioner resided, it appearing in evidence that no one of the name of petitioner resided at any of such addresses, the address being treated as surplusage, the writing of such wrong address did not constitute a distinguishing mark, and could not create any uncertainty as to the person for whom the vote was cast.

*(8) Elections. Ballots. Distinguishing Marks.*

Where a voter without making a cross in the circle under the party emblem, drew a line across the name of the candidate of that party for an elective office, and wrote the name of petitioner in the right-hand column, the line through the name amounted to a distinguishing mark.

*(9) Elections. Ballots.*

Where voters misspelled the christian or surname of the candidate or the name of the street of the candidate's residence, the court will apply the doctrine of *idem sonans* and will give effect to the voter's intention if it can be determined fairly.

*(10) Elections. Ballots.*

Where a voter wrote the name of the candidate with some middle initial other than that of the candidate under the circumstances of the case the

middle initial not being required, for the purpose of identification, the ballot is not affected.

*(11)   Elections.   Ballots.*

Where a voter wrote the surname of the candidate with some christian name other than that of the candidate, the ballot should not be counted for the candidate, the name being that of another person.

*(12)   Elections.   Ballots.*

Ballots cast for a candidate whose name was not printed on the official ballot, where the voter simply wrote the surname or the surname with "Mr." prefixed, in some cases with an address and in others without an address, the intent of the voter to vote for the petitioner being apparent, should be counted.

*(b)* ballots where the voter wrote the candidate's name without a middle initial, some with address and some without address, should be counted.

*(13)   Elections.   Ballots.*

Ballots where a voter made a cross in the circle under the party emblem and wrote the name of petitioner in the same column and did not cross out the name of the candidate printed in the column for the elective office, are invalid it being impossible to determine his choice for such office.

*(14)   Elections.   Ballots.*

A ballot marked with a cross in each circle under two party emblems should not be counted.

*(15)   Elections.   Ballots.*

Where a voter placed a cross in the circle under a party emblem and then in the column at the right of the ballot wrote the name of a candidate for an elective office, but did not draw a line through the name of the candidate for such office printed under the party emblem, the ballot was properly counted, under the authority of *Gainer v. Dunn,* 29 R. I. 239, for the candidate in the party column.   Sweetland C. J., and Vincent, J., dissenting on the above point (15).

CERTIORARI.   Heard and record of respondents affirmed.

SWEETLAND, C. J.   This is a petition for a writ of *certiorari* to be addressed to the respondents directing them to certify to this court for review the record of their determination in the matter of counting the votes cast for mayor of Pawtucket at the recent election in that city, to the end that the same may be quashed.   The writ was issued and the respondents have certified said record to us, and also have transmitted to us the ballots cast at said election and counted by them.

We have received evidence in regard to said election for mayor from which it appears that it was held in unusual circumstances. The petitioner was nominated for that office at the regular democratic convention but the certificate of his nomination was not duly filed within the time prescribed by law, and the name of the petitioner as a candidate for said office was not printed upon the official ballot. When it was determined that the petitioner's name was not to be so printed the democratic managers for said city by public meetings, advertisements in newspapers and by other printed notices sought to instruct those electors, who wished to vote for the petitioner as the democratic candidate for mayor, as to the method by which they could do so in accordance with the provisions of the statute. The electors were urged to write the name of the petitioner upon their ballots in the space below the words "for Mayor" appearing in the right-hand column of said ballots, and further the electors were urged to write the address of the petitioner, 53 Arch Street, in connection with his name. A large number of the electors endeavored to comply with these instructions and requests. It is in (1) connection with what the petitioner claims were attempts on the part of electors to follow the statutory directions as thus interpreted that many of the questions now before us arise. In passing upon such questions the circumstances surrounding the election should be taken into consideration.

The republican candidate for mayor whose name was printed on the official ballot was Charles H. Holt. Counsel has appeared for Mr. Holt, has presented an argument and filed a brief in his interest. The respondents counted 9,766 votes for Mr. Holt, and 7,895 votes for Mr. Keenan and then voted "That Charles H. Holt be declared elected mayor." It is the record of such vote that the petitioner now asks to have quashed.

The objection of the petitioner is that the respondents reached their conclusion by rejecting as defective and

refusing to count for the petitioner a large number of ballots which were cast in his favor for mayor, and also by erroneously treating certain defective ballots as containing votes in favor of Mr. Holt, for that office. With reference to the defects which the respondents found in ballots of the first description, and also as to the defects urged by the petitioner against those of the second description, the ballots fall into somewhat clearly marked classes. The petitioner's counsel, with the assent of counsel for the respondents and for Mr. Holt, for convenience in presenting the matter to us have separated the ballots which the petitioner claims were improperly rejected into nineteen groups and have designated each group with a letter of the alphabet, employing the letters from "A" to "S" inclusive. Counsel have also placed the ballots containing votes which the petitioner claims were improperly counted for Mr. Holt into groups, each group being designated by a letter from "T" to "Z" inclusive.

In preparing the ballots for this election, under the words "For Mayor" in the right-hand column two parallel horizontal lines, some distance apart, were printed, leaving a blank space between. The blank space between such parallel lines has been termed "a box". The respondents counted in favor of Mr. Keenan the votes contained in all ballots on which the words "John G. Keenan, 53 Arch Street" were written, without erasures or retracing, within the so-called box, each of said words being spelled correctly and rejected all of the other ballots which the petitioner claims should have been counted for him. This action of the respondents raises questions which affect a number of the designated groups of ballots. The statute provides with reference to preparing the official ballot that "in each column the names of the candidates, their residence together with the street and number if any, shall be placed immediately below the title of the office for which they are nominated." Section 24, Chapter 11, of Elections by Secret Ballot, General Laws 1909. In Section 43 of said Chapter 11, it is provided

as follows: "The voter may insert the names of persons for whom he desires to vote, in the blank or right-hand column, under the proper title of office, and such votes shall be counted." For reasons readily to be deduced the general assembly did not impose upon a voter desiring to insert the name of a person in the right-hand column the requirement that he should also insert the residence of such person together with street and number, if any. As a general rule requirements which are not specifically prescribed by statute should not be imposed upon the electors by inference. Mr. Keenan was publicly known as a candidate for mayor. In case his name was written in proper place on the ballot without the addition of his residence there would be no uncertainty as to the person for whom the vote was cast. In our opinion those ballots on which the name of the petitioner alone is written in the proper place should be counted as votes in his favor for mayor. At other elections cases may arise in which without the addition of the residence of a person whose name is inserted in the right-hand column it will be impossible to determine the voter's choice for an office; then, although the statute does not require it, the voter should insert the residence in order that his ballot may be counted for the person for whom he desires to vote. In the circumstances of this election when the residence has been written in connection with the petitioner's name that addition does not vitiate the ballot, it does not constitute a distinguishing mark, and should be treated as surplusage.

Each of the ballots in group "A" was rejected because no address was written upon the ballot in connection with the petitioner's name. All of the ballots in this group, 319 in number, should be counted for the petitioner.

Each of the ballots in group "B" was rejected because the address was written outside of the so-called box. The printing of said parallel lines forming the "box" is not provided for by statute. The address does not constitute a distinguishing mark if written in connection with the

petitioner's name. All of the ballots of this group, 148 in number, should have been counted for the petitioner.

Each of the ballots in group "C" and "CC" was rejected because the petitioner's name was written outside said "box." If a voter wishes to vote for a person for any office by writing that person's name upon the ballot he should comply with the statutory requirement and insert the name "in the blank or right-hand column under the proper title of office." An examination of the ballots in these groups discloses examples of wide departure from the requirement of the statute. On some of these ballots the petitioner's name or a name which perhaps was intended for that of the petitioner, has been written in various places on the ballots which have no connection with the space under the words "For Mayor" in the right-hand column. We have passed upon these ballots with all the liberality which the statutory requirement permits, and disregarding the so-called box we have counted in favor of the petitioner for mayor all ballots which presented a substantial compliance with the statutory requirement. We think that 29 ballots in these two groups should be counted for the petitioner:

Each of the ballots in group "D" was rejected because the voter had placed a voting mark after the petitioner's name written in the right-hand column. In *Rice v. Clarke*, 43 R. I. 533, it was held that it is not necessary for a voter to make a cross at the right of a name which he has written in the blank or right-hand column of his ballot in order to make such ballot an effective vote for the person whose name is so written. We are of the opinion, however, that the making of such cross does not render the vote invalid. All of the ballots in this group, 97 in number, should be counted for the petitioner.

On each of the ballots in group "E" the voter has written the petitioner's name with an address on Arch Street other than 53. We have treated the address in the circumstances of this case as surplusage. From the evidence which we received on this point it is clear that no person of the name

of Keenan resided at any of the addresses written on the ballots in this group. The addition of the wrong address in this case does not tend to create any uncertainty as to the identity of the person whose name was written. Each of the ballots in this group, 140 in number, should be counted for the petitioner.

In each of the ballots in group "F" the voter wrote "Mr." before the petitioner's name or "Pawtucket, R. I." or "City" after his name. In our opinion in the circumstances of this case the abbreviation "Mr." or the words quoted should be treated as surplusage. All of the ballots in this group, 75 in number, should be counted for the petitioner.

In each of the ballots in group "FF" the voter wrote after the petitioner's name a number on a street other than Arch. Most of the streets named have a sound somewhat similar to "Arch". We received evidence that no person named Keenan resided at any of the addresses so written. The addresses were surplusage. The writing of a wrong address after the petitioner's name in the circumstances did not constitute the making of a distinguishing mark and it cannot reasonably be held that it created any uncertainty as to the person for whom the vote was cast. All of the ballots in this group, 12 in number, should be counted for the petitioner.

(8) In each of the ballots in group "G" the voter, without making a cross in the circle under the republican emblem, drew a line across the name "Charles H. Holt" printed on the ballot, and wrote the petitioner's name in the right-hand column. This is not in accordance with any manner of voting prescribed by statute. Following the rule in *Rice v. Town Council of Westerly*, 35 R. I. 117, the line through the name of Mr. Holt amounts to a distinguishing mark. This question has been before us recently in *Sylvestre v. Board of Aldermen*, 43 R. I. 492, and a somewhat similar ballot was declared invalid. None of the ballots in this group should be counted for the petitioner.

Each of the ballots in group "H" was rejected because the voter misspelled the word "John" or "Keenan" or "Arch Street" or wrote some other word or words in their stead. We have passed upon these ballots with liberality, having in mind the different degrees of education and knowledge of writing and spelling possessed by voters. We have applied the doctrine of *idem sonans* to the names in question and have sought to give effect to the voter's intention if it can be determined fairly. In our opinion 300 of the ballots in this group should be counted for the petitioner.

Each of the ballots in groups "I", "J" and "K" was rejected because the voter wrote the name "Keenan" with some christian name other than "John" or wrote "John Keenan" with some middle initial other than "G". To those ballots having a middle initial other than "G" we have applied the principle: that ordinarily a middle initial may be disregarded as not part of a legal name. In the matter before us the middle initial of the petitioner's name is not required for the purpose of identification. As to those ballots on which the name "Keenan" is written with a christian name other than "John" a different question is presented. The statutory provision is that the voter "may insert the names of persons for whom he desires to vote." A person's legal name consists of a christian and surname. We shall later consider whether the statutory requirement is met by writing the surname alone. Reasonable liberality does not permit us to hold that writing "Keenan" upon a ballot with such a christian name as Joseph, William, Eugene, or any other than John amounts to the insertion of the petitioner's name upon the ballot. It differs from the case in which the surname Keenan is written alone, for it is the insertion of a name other than that of the petitioner, *i. e.*, the name of another person. Of the ballots in these groups 98 should be counted for the petitioner.

Each of the ballots in groups "L", "M" and "N" was rejected because the voter wrote on his ballot either "Keenan" or "Mr. Keenan" in some cases with an address and in some cases without. In the circumstances of this election we think that the rule set out in *Rice v. Durfee*, 43 R. I. 407 governs. That case dealt with a name written upon a ballot cast at a town election in which the Australian (12) ballot system was not employed. The necessity, however, of clearly designating the person voted for was as imperative with reference to that form of ballot as in a ballot cast under the provisions of the Secret Ballot Law. In that case the court approved the authority of cases arising under the Australian system. All of the 24 ballots included in these groups should be counted for the petitioner.

Each of the ballots in groups "O", "P" and "Q" was rejected because the voter wrote "John Keenan" without a middle initial. On some of these ballots the voter wrote the petitioner's address, on others the voter did not. By writing "John Keenan" the voter inserted the petitioner's name and all the ballots in these groups, 35 in number, should be counted for the petitioner.

Each of the ballots in group "R" was rejected on the ground that it showed an erasure or a retracing of the name. After examination we are of the opinion that all of the ballots in this group, 176 in number, were valid and should be counted for the petitioner.

Each of the ballots in group "S" was rejected on the ground that it contained a distinguishing mark. Upon examination we find that of this group 115 should be counted in favor of the petitioner.

The total of the ballots which we find were erroneously rejected and should be counted for the petitioner is 1,568. If this number be added to 7,895, the number of ballots counted in his favor by the respondents, the total is 9,463 which is the number of valid votes cast for the petitioner for the office of mayor at said election.

We will now consider the claim of the petitioner that certain ballots were erroneously counted for Charles· H. Holt by the respondents.

In each of the ballots in group "T" the voter made a cross in the circle under the republican emblem, then wrote the name of the petitioner for mayor in the republican column and did not cross out the name of Mr. Holt. This action of the voter renders it impossible to determine his choice for the office of mayor, and surely negatives the claim that the ballots should be counted for the republican candidate. All of the ballots in this group, 9 in number, were erroneously counted in favor of Mr. Holt.

The petitioner objects to the action of the respondents in counting all of the ballots in groups "V", "X" and "Z" in favor of Mr. Holt on the ground that each contains distinguishing marks. Upon examination we find that 120 ballots in these groups were improperly counted in favor of Mr. Holt.

The petitioner objects to the action of the respondents in counting the ballots in group "Y" in favor of Mr. Holt. This group includes two ballots cast· by property voters which ballots have a circle under the republican emblem and also a circle under the democratic emblem. In each case the voter made a cross in each circle. Under the provisions of Section 43, Chapter 11, General Laws, 1909, it is only "when a voter has placed a cross (X) in any one circle, and has not made any mark in any other circle," that "such cross (X) shall be counted as a vote for each of the candidates in the column above which it is placed." The two ballots in this group were improperly counted for Mr. Holt.

The petitioner has waived his objection to the action of the respondents in counting the ballots in group "W" in favor of Mr. Holt.

Over the objections of the petitioner the 53 ballots constituting group "U" were counted in favor of the republican candidate. All of these ballots are of the following char-

acter. The voter placed a cross in the circle over the republican column and then in the column at the right of the ballot wrote the name of the petitioner in the blank space under the designation of the office of mayor, but did not draw a line through the name of Mr. Holt. Section 43, Chapter 11, General Laws, 1909, is as follows: "Sec. 43. On receipt of his ballot from the proper election officer, the voter. . . . shall prepare his ballot as follows: If he desires to vote for all the candidates of one political party he shall place a cross (X) within the circle above the the name or designation of that party. In case he desires to vote for a candidate whose name is not printed under the circle in which he has marked, he shall cancel the name of the candidate in such column for whom he refuses to vote, by drawing a line through such name, and shall vote for the candidate of his choice by marking a cross (X) in the square opposite the name of the candidate of his choice, or by writing in the right-hand column prepared for that purpose, under the proper title of the office, the name of the person for whom he desires to vote. In such case the vote shall be counted for the candidate against whose name a cross has been so marked, or whose name has been so inserted in the right-hand column, and such ballot shall not be counted for the candidate for the same office whose name is cancelled. When a voter has placed a cross (X) in any one circle, and has not made any mark in any other circle, such cross (X) shall be counted as a vote for each of the candidates in the column above which it is placed, except for those candidates whose names have been cancelled." The voters whose ballots are included in this group failed to make effectual that which was probably their purpose, i. e. to vote for the petitioner, for each neglected to comply with the plain statutory requirement; but the contention that their votes should therefore be counted for Mr. Holt presents an entirely different question. The respondents contend that they were justified in counting these ballots for Mr. Holt by reason of the concluding sentence of the

section: "When a voter has placed a cross (X) in any one circle, and has not made any mark in any other circle, such cross (X) shall be counted as a vote for each of the candidates in the column above which it is placed, except for those candidates whose names have been cancelled." It is the opinion of the writer, and in this Mr. Justice VINCENT concurs, that this provision like all other statutory provisions should receive a reasonable construction. It was not the intention of the general assembly in such a case as that before us, when a voter marks a cross in the republican circle and does not cross out the name of Mr. Holt that such ballot should be counted for Mr. Holt, without regard to any other action of the voter or indication of his intention appearing elsewhere on the ballot. Notwithstanding the unqualified language of the sentence quoted such ballot would be affected by the provisions of Section 46, that if for any reason it is impossible to determine the voter's choice for any office to be filled his ballot shall not be counted for such office, and further that no voter shall place a mark upon his ballot by which it can later be identified as the one voted by him. In the circumstances surrouding this election it may well be found that in writing the name of Mr. Keenan in the column at the left under the designation of mayor the voter intended to vote for the petitioner for that office. Although he has failed to make that purpose effectual, to count the vote for Mr. Holt would violate a fundamental constitutional principle that the vote of an elector intended for one candidate should not be counted in favor of his opponent. Again, if under the terms of the statute the voter is held to have intended to vote for Mr. Holt, he has also by writing in the left-hand column as clearly at least indicated an intention to vote for Mr. Keenan. His ballot therefore shows an intention to vote for two candidates for the office of mayor. By the provisions of Section 46, as it is impossible to determine the voter's choice, his ballot shall not be counted for such office. Again, if it should be held that by his action the voter has voted for Mr. Holt in accordance with the

provisions of said Section 43, then by writing the name of Mr. Keenan in another part of the ballot he has deliberately placed other marks upon his ballot by which it may afterwards be identified as the one voted by him. It is sought to uphold the action of the respondents upon the authority of *Gainer v. Dunn*, 29 R. I. 243. It should be said of that case that it was an early decision of the court relating to the Australian ballot law. It is generally recognized that the early decisions of the courts generally were marked by strict and sometimes a blind following of the literal provisions of the law without a consideration of its provisions as a whole. There appears in all jurisdictions a greater liberality in the decisions and a departure from the harshness of the earlier cases. That is true of the progress of judicial opinion in this state; and *Gainer v. Dunn, supra*, in so far as it leads to the extremely unreasonable and unconstitutional result of making a vote probably intended to be cast for one candidate count in favor of his opponent, should no longer be followed. The opinion of the majority, however, is that it is not desirable to disregard the authority of *Gainer v. Dunn, supra*, and that all of the ballots in this group, 53 in number, were properly counted for Mr. Holt.

The total number of ballots which the court finds were improperly counted by the respondents for Mr. Holt is 131. If this number be deducted from the total number counted for him by the respondents there is left 9,635 valid votes which were cast for Charles H. Holt, and he has a plurality of 172 votes for the office of mayor of Pawtucket.

Although we are unable to agree with the determination of the respondents in the particulars which we have specified above, our judgment upon the writ is that the record of the respondents "That Charles H. Holt be declared elected mayor" is affirmed.

The records of the respondents certified to us as aforesaid and said ballots shall be returned to the respondents.

*Philip S. Knauer, Edward T. Hogan*, for petitioner.

*Charles A. Walsh, James G. Connolly*, City Solicitor of Pawtucket, for respondents.