## SIZEMORE v. HENSON et al.

Court of Appeals of Kentucky.

Feb. 12, 1954.

F. P. Stivers, Manchester, Logan E. Patterson, James S. Wilson, Pineville, for appellant.

R. W. House, John M. Lyttle, John D. White, Manchester, for appellees.

CLAY, Commissioner.

This is an election recount proceeding involving the office of jailer in Clay County, voted on at the last November 3rd general election. The race was very close and after a recount of the ballots by the circuit court, it was adjudged that Tom J. Henson was elected by a majority of three votes over his opponent J. M. Sizemore. The latter appeals.

Something over 100 ballots are in controversy. In order that the questions concerning these ballots may be more fully understood, we are printing a copy of one of them (omitting the constitutional amendments printed thereon). This particular

ballot is discussed under subdivision 1 of this opinion. There are five groups of ballots involving 70 votes which were either counted for Henson or counted for no one, and all of which Sizemore claims were erroneously counted.

1. In the first group are 16 ballots not voted for anyone in the Republican column (where Henson's name appeared) by either a mark in the circle under the party emblem or a mark opposite the printed name of any candidate in that column. Most of these ballots have a stenciled cross-mark in the first box of the column under Sizemore's picture, which is immediately under the office heading "For Representative". The others have such a mark in a different block in Sizemore's column, other than the one opposite his name. These votes were counted for no one.

KRS 118.280(2) provides in part as follows:

"No ballot shall be rejected for any technical error that does not make

GENERAL ELECTION NOVEMBER 3, 1953

it impossible to determine the voter's choice."

With this provision in mind an examination of these ballots indicates clearly that: (1) the voter had no intention of voting for Henson, and (2) he was trying to vote for someone. It may be noted that on these ballots the voter had also made marks in the columns for other *independent* candidates.

An examination of the ballot we have copied in this opinion shows that there was only one printed name in the entire column under Sizemore's picture. That name was his name. The other printing in the column was unnecessary, and the listing of nine other officers with accompanying blank lines and boxes was not only unnecessary but would certainly tend to confuse the voter.

We cannot examine these ballots without realizing that the voters were making an honest effort to cast a vote for someone. Doubtless they could have done the job more perfectly, but we have held that it is proper to search out the purpose of the voter and if his intention is manifest, it should be given effect. Thompson v. Boling, 240 Ky. 340, 42 S.W.2d 321. We should not disfranchise these voters if it may be ascertained that a bona fide attempt was made to vote for a particular candidate.

It is apparently conceded by the parties that if the stencil mark had been in the circle under Sizemore's picture it would have been a vote for him. A mark in the first box appearing in his column likewise indicates that the intention was to vote for him as there was no name opposite the first box and the only name appearing thereunder in the entire column was that of Sizemore. While a mark in a box further down the column may at first glance appear meaningless, since no other name appears in Sizemore's column but his, we have the choice of determining that the vote was either for no one or it was for Sizemore.

In view of the particular form of ballot used in this election, we are inclined to give the benefit of the doubt to the voter rather than to deprive him of his democratic right. The fact that a substantial number of voters apparently were confused by this ballot and failed to mark it in the proper box is persuasive that the type of ballot caused the confusion. We are of the opinion that because of its form, Sizemore's *column* was of more significance than the box opposite his name. We do not mean to say that a mark anywhere in the column would necessarily constitute a vote, but where the voter has marked in a box which fairly can be identified with a candidate, then it should be counted for that candidate.

█ It is our conclusion this group of 16 ballots should have been counted for Sizemore. We do not believe this ruling conflicts with the case of Brandenburg v. Hurst, 289 Ky. 155, 158 S.W.2d 420, in which we held that *where there were several named candidates in a column* a mark in the square opposite a blank line would not constitute a vote for such candidates.

The above reasoning applies to the next three groups of ballots.

█ 2. The second group consisted of 22 ballots in which the voter had obviously voted for a named candidate in the "Republican Party" column and had also marked one of the boxes in Sizemore's column. Clearly this was not a vote for Henson, and giving effect to the mark in Sizemore's column, we must consider it a vote for Sizemore which the trial court failed to count.

█ 3. In the third group are 14 ballots which were counted for Henson. These show a stenciled cross-mark in the circle under the Republican Party emblem. Without other marks this, of course, would be a vote for Henson. However, in the first box appearing in Sizemore's column there is also a stenciled cross-mark. This type of ballot indicates that the voter intended to cast a vote for all regular Republican candidates, except that he was "scratching" his ballot in favor of Size-

more. Therefore, instead of these being counted as 14 votes for Henson they should be counted as 14 votes for Sizemore.

4. In group 4 are 11 ballots which are of the same type as those in group 3, except that the mark in Sizemore's column is in a box other than the first one, though not opposite Sizemore's printed name. To be consistent with our ruling with respect to the ballots in group 1, these should likewise be counted for Sizemore.

5. Seven other ballots which fall into different patterns may be briefly discussed.

■ Exhibit No. 4, Garrard Precinct No. 32. This ballot was voted for Henson, but on the blank line for the election clerk to sign is written in pencil "Garrard". As provided by KRS 118.280(1), the ballot shall be signed on the back by one of the election officers. We cannot accept the written name of the precinct as the signature of an election officer. This ballot should not have been counted.

■ Exhibit No. 2, Sidell Precinct No. 16. This ballot was counted for Henson. There is a faint smudge on the edge of the circle under the device heading the column in which Henson's name appears. The location and character of this mark indicates it is no more than a smudge from another mark on the ballot, made when it was folded vertically. It cannot be counted as a vote for Henson.

■ Exhibit No. 8, Manchester Precinct No. 11. This ballot was counted for no one. It shows a vote for Sizemore and also an ink mark below the square opposite the name of Henson. Even if it was conceded that an intentional mark *near* Henson's name would constitute a vote for him, about which there is serious doubt, it is plainly evident that this mark was a blot made when the ballot was folded horizontally near the bottom. This ballot should have been counted for Sizemore.

■ Exhibit No. 2, Hubbardsville Precinct No. 25. This ballot was counted for Henson. It has a stenciled X mark under the party emblem in Henson's column and a *penciled* X mark in the circle under the picture of Sizemore's column. The ballot also has a *penciled* X mark in Henson's circle and both a stenciled and *penciled* X mark in another independent circle. The trial court apparently took the view that, as required by KRS 118.280, all markings upon the ballot should be with black ink stencil (except when writing in a name), and therefore the mark for Sizemore could not be given effect. However, the other penciled marks as well as this one violate the statute, and apparently such marks were either put upon the ballot before being delivered to the voter or they were made for the purpose of identification. This is a spoiled ballot and should have been counted for no one. It cannot be said to be marked for an illiterate voter as provided in KRS 118.300(1).

■ Exhibit No. 1, Manchester Precinct No. 21. This ballot was counted for Henson. It has an X mark in the block below that opposite Henson's name and an X mark two blocks below the one opposite Sizemore's name. On the face of the ballot these two X marks were votes for nobody. If because of the proximity of the mark to the candidate's name a vote for either should be counted, each candidate can make the same claim. It is impossible to tell from this ballot what the voter intended. In our opinion he voted for neither candidate, and the ballot should not have been counted for Henson.

■ Exhibit No. 5, Garrard Precinct No. 32. This ballot was counted for Henson and was so marked. However, in the lower right-hand corner there is a clear X mark which could have been made for no other purpose but to identify the voter. This is contrary to the provisions of KRS 118.320(4), and the ballot should not have been counted.

■ Exhibit A, Malcolm Precinct No. 17. This ballot was counted for no one. The voter, instead of marking the block opposite Sizemore's name, wrote his name under that of Henson (on the line provided

for the purpose of writing in a candidate's name) and correctly marked the block opposite the name so written in. This ballot should have been counted for Sizemore. We do not think this ruling conflicts with Kash v. Hurst, 189 Ky. 233, 224 S.W. 757, because of the *place* where the candidate's name was written in.

The trial court adjudged that Henson had been elected by a majority of three votes. As a result of the conclusions above reached, we find that Sizemore is entitled to have counted in his favor 65 additional votes. In addition, because 30 votes were counted for Henson which we believe should have been counted for Sizemore or for no one, Henson loses these votes. The result is that Sizemore realizes a net gain of 95 votes, and after deducting the three vote margin calculated by the lower court, Sizemore wins the election on the recount by 92 votes.

The judgment is reversed.