PETRIE *v* CURTIS

1. APPEAL AND ERROR.

Michigan Supreme Court need not perpetuate error simply because it reached a wrong result in one of its earlier decisions.

2. ELECTIONS—BALLOTS—EVIDENCE.

Evidence of such facts as may be called the circumstances surrounding the election—such as, who were the candidates brought forward by the nominating convention; whether other persons of the same name resided in the district from which the office was to be filled, and, if so, whether they were eligible to the office and were publicly named for it, and the like—is always admissible for the purpose of aiding in the application of any ballot which has been cast; and where the intent of the voter as expressed by his ballot, when considered in the light of such surrounding circumstances, is not doubtful, the ballot should be counted and allowed for the person intended.

3. ELECTIONS—WRITE-IN BALLOTS—LAST NAME—GIVEN NAME.

Trial court's grant of summary judgment ousting defendant from the office of sheriff and declaring plaintiff legally entitled to be sheriff should be affirmed where plaintiff was the sole write-in candidate and opponent to defendant for the office of sheriff, plaintiff received more votes than defendant if votes giving his last name but failing to give his given name were counted, and defendant admitted that plaintiff's name was uncommon, that he was well known to the people in the county as a juvenile officer of the probate court and that his campaign for sheriff was well publicized.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts §§ 186, 187.
[2] 26 Am Jur 2d, Elections § 271.
[3] 26 Am Jur 2d, Elections § 272.

Validity of write-in vote where candidate's surname only is written in on ballot. 86 ALR2d 1025.

Appeal from Court of Appeals, Division 3, Fitz-gerald, P. J., and Holbrook and Bronson, JJ., reversing Antrim, Charles A. Wickens, J. Sub-mitted April 4, 1972. (No. 5 April Term 1972, Docket No. 53,359.) Decided May 4, 1972.

32 Mich App 151 reversed.

Complaint for *quo warranto* by Bryce Petrie against Robert Curtis, contesting defendant's elec-tion to the office of sheriff. Summary judgment ousting defendant from office and declaring plaintiff legally entitled to be sheriff. Defendant appealed to the Court of Appeals. Reversed. Plaintiff ap-peals. Reversed.

*Glenn Aylsworth* and *Richard L. Benedict,* for plaintiff.

*Zerafa & Zerafa,* for defendant.

PER CURIAM. Bryce Petrie, plaintiff, was a write-in candidate for the office of Sheriff of Antrim County in the election of November 5, 1968. He was the sole write-in candidate and opponent to the Republican nominee, Robert Curtis.

Curtis was declared the winner. Upon a subse-quent recount, however, Petrie would have been the winner if 132 votes had not been invalidated. These votes had plaintiff's last name, "Petrie," written on the ballots but failed to include his given name "Bryce."

Petrie filed a complaint for *quo warranto* in the Antrim County Circuit Court. He later filed a mo-tion for summary judgment. At the hearing on this motion, Curtis admitted the facts in an affidavit sub-mitted by Petrie to the effect that his name was

uncommon, that he was well known to the people in the county as a juvenile officer of the probate court, and that his campaign for sheriff was well publicized.

The court granted the motion for summary judgment, basing its decision on the fact "that a voter's intention should not be frustrated by a legal technicality," and concluded that "there can be no other logical explanation of those votes."

This decision was reversed by the Court of Appeals on the basis of three Michigan Supreme Court cases: *People, ex rel. Attorney General,* v *Tisdale,* 1 Doug 59 (1843); *People, ex rel. Lake,* v *Higgins,* 3 Mich 233 (1854); *People, ex rel. Williams,* v *Cicott,* 16 Mich 283 (1868).

The Supreme Court in the *Higgins* and the *Cicott* cases felt bound by the precedent of *Tisdale* to hold invalid write-in votes which did not contain the "Christian name" of the candidate. The Court of Appeals noted that:

"The rule established by Michigan case law, which may permit the intent of the electorate to be frustrated by a mere technicality, as evidenced by the instant case, appears to be contrary to the rule in every other jurisdiction. See 26 Am Jur 2d, Elections, § 268 p 96; 86 ALR2d 1025." (32 Mich App 151, 154 [1971]).

Does Michigan precedent require the exclusion of the 132 ballots because they lacked plaintiff's given name?

Supreme Court cases subsequent to *Tisdale, Higgins* and *Cicott, supra,* have clearly indicated that citizens will not be deprived of their votes "because of technical inaccuracies in the manner of expressing it on the ballot." *Jonkman, ex rel. Shaw,* v *Striplin,* 255 Mich 215, 217 (1931). See also, *Cory* v *MacKenzie,* 297 Mich 523 (1941). This right of the voters would be rendered nugatory in this case if

we are bound by the precedent of *Tisdale, Higgins* and *Cicott, supra*. This Court need not perpetuate error simply because it reached a wrong result in one of its earlier decisions.

In his dissenting opinion in *Cicott, supra,* Chief Justice COOLEY wrote as follows (pp 317, 318, 319, 320):

"I regret that my brethren are disposed to still follow the case of *People* v. *Tisdale,* 1 *Doug. Mich.,* 59, notwithstanding the majority are of opinion that it is unsound in principle. The case has no support, as I think, either in the authorities or in the analogies of the law, and no court outside the state has ever followed it. It is true, as my brethren have remarked, that it lays down a rule easy of application, and one that is no more unfair to one candidate than to another; but it does not seem to me to be sufficient reason for retaining an unsound rule that it is impartial in its infliction of injustice. In every case where it becomes important to apply the rule at all, it has the effect to defeat the clearly expressed will of the electors, and although, if we were to consider voters only as aggregated in two political parties, there might be no reason to complain of it, because it would be likely to defeat one party as often as the other, yet the considerations are very different when we reflect that election contests are between individuals, and that that person is irremediably wronged who, having received a plurality of the suffrages of his fellow citizens, is deprived of his office by the application of some arbitrary and technical rule. It can be little compensation to him that, in the next election, a similar application of the rule deprives a political opponent of an office to which he is fairly chosen, and thereby balances the accounts between the parties by doing equal injustice to an individual member of each. All rules of law which are applied to the expression, in constitutional form, of the popular will, should aim to give effect

to the intention of the electors, and any arbitrary rule which is to have any other effect, without corresponding benefit, is a wrong, both to the parties who chance to be affected by it, and to the public at large. The first are deprived of their offices, and the second of their choice of public servants.

\* \* \*

"The fallacy of the rule consists in its assuming that a certain form of ballot clearly expresses the voter's intention, while another form is so uncertain that it is dangerous to attempt to arrive at the meaning by evidence. But in fact no ballot can identify with positive certainty the persons for whom it is cast; and notice must be taken of extrinsic circumstances in order to apply it. It is always possible that other persons may reside in the election district having the same names with some of the candidates; but neither the canvassers nor the courts ever assume that there is any difficulty in these cases, but they count the votes for the persons who have been put forward for the respective offices. And in some cases where an element of uncertainty is introduced into the ballot unnecessarily, as by the addition of an erroneous designation, the courts resolve the difficulty by rejecting the erroneous addition, and counting the ballot for the person for whom it was evidently designed.

\* \* \*

"The true rule upon this subject I conceive to be this: Evidence of such facts as may be called the circumstances surrounding the election—such as, who were the candidates brought forward by the nominating conventions; whether other persons of the same name resided in the district from which the office was to be filled, and, if so, whether they were eligible to the office and were publicly named for it, and the like—is always admissible for the purpose of aiding in the application of any ballot which has been cast; and where the intent of the voter as ex-

pressed by his ballot, when considered in the light of such surrounding circumstances, is not doubtful, the ballot should be counted and allowed for the person intended."

We adopt the rule as stated by Chief Justice COOLEY and overrule the rule followed in *Tisdale, Higgins* and *Cicott, supra.*

The decision of the Court of Appeals is reversed, and that of the trial court is affirmed. No costs, there being a public question involved.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred.