Francis P. DEVINE, Appellant,

v.

Raymond James WONDERLICH,
Appellee.

No. 60823.

Supreme Court of Iowa.

June 28, 1978.

James P. Rielly, of Spayde & Rielly, Oskaloosa, for appellant.

Ralph R. Brown, of McDonald, Keller & Brown, Dallas Center, for appellee.

Considered en banc.*

McCORMICK, Justice.

We must here decide who won a Keokuk County board of supervisors seat in the November 1976 election. A canvass after the election showed plaintiff Francis P. Devine, a write-in candidate, defeated defendant Raymond James Wonderlich, the incumbent. Wonderlich initiated a contest and the contest court, after invalidating certain ballots, declared Wonderlich the winner. Devine appealed to the district court which, although disagreeing with the contest court as to the validity of a number of ballots, also concluded Wonderlich won the election. Upon our de novo review, we reverse and remand.

Several general principles guide our review. Contest procedures for county offices are established in Code chapter 62. The contest is tried as a civil action. §§ 62.2, 62.13, The Code. Appeal lies from the contest court to district court which hears the appeal in equity and determines anew all questions in the case. § 62.20, The Code. Hence our review is also de novo. *Stamos v. Gray*, 221 Iowa 145, 147, 264 N.W. 919, 920 (1936); *Murphy v. Lentz*, 131 Iowa 328, 330, 109 N.W. 530, 531 (1906).

■ Because an election contest involves the right of qualified voters to have their ballots counted for the candidate of their choice, the right of franchise is at stake. The right to vote is a fundamental political right. It is essential to representative government. *Wesberry v. Sanders*, 376 U.S. 1, 17–18, 84 S.Ct. 526, 535, 11 L.Ed.2d 481, 492 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."). Any alleged infringement of the right to vote must be carefully and meticulously scrutinized. *Reynolds v. Sims*, 377 U.S. 533, 561–562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506, 527 (1964).

■ Statutory regulation of voting and election procedure is permissible so long as the statutes are calculated to facilitate and secure, rather than subvert or impede, the right to vote. Among legitimate statutory objects are shielding the elector from the influence of coercion and corruption, protecting the integrity of the ballot, and insuring the orderly conduct of elections. *Whitcomb v. Affeldt*, 319 F.Supp. 69, 76 (N.D.Ind.1970), aff'd, 405 U.S. 1034, 92 S.Ct. 1304, 31 L.Ed.2d 576 (1972). However, because the right to vote is so highly prized, these statutes must be construed liberally in favor of giving effect to the voter's choice, and every vote cast enjoys a presumption of validity. *Paulson v. Forest City Community School District*, 238 N.W.2d 344, 348 (Iowa 1976).

■ As a general rule, if a voter affixes any mark to his ballot which fairly indicates his intention to vote for a particular candidate, the vote should be counted for the candidate unless a mandatory provision of the election law is violated. 26 Am.Jur.2d Elections § 258 at 84.

Before addressing the specific issues in this case, it may be helpful to outline the factual background from which they arise.

Francis P. Devine was a Democratic candidate for Keokuk county supervisor in the November 1974 general election. He campaigned extensively, advertised his candidacy, and was listed on the ballot in that election. He was defeated by 50 votes.

In the primary election of June 1976 no Democratic candidate was on the ballot in the supervisor race for the 1977 term. However, Devine received a number of write-in votes in the primary and decided to seek the office. In late June the Democratic county central committee certified his candidacy to the county auditor. In September his candidacy was challenged because he had not been selected by a reconvened county convention pursuant to § 43.-78(1)(d), The Code.

The county auditor was uncertain about whether Devine's name should be printed on the paper ballot. On October 4, 1976, he notified Devine his name would be on the

* MASON, J. serving after June 14, 1978, by special assignment.

ballot, but two days later he informed him he had changed his mind. Devine commenced an injunctive action to have his name put on the ballot. The auditor had stickers printed, showing Devine's name and the office he sought, which he intended to attach to the ballot if Devine's lawsuit was successful. However, Devine lost his case, and the auditor gave the stickers to the secretary of a county taxpayers' association who distributed more than 3000 of them to other persons in the county.

Devine's problem received considerable publicity, and he campaigned and advertised extensively as a write-in candidate. After the election, the official canvass of votes showed he received 2655 votes and Wonderlich 2653. However, this result was upset by the contest court, and Devine also was declared the loser in district court. This appeal followed.

The district court concluded Wonderlich won by a vote of 2638 to 2503. At issue here is the validity of 282 ballots, 272 of which Devine claims and ten of which Wonderlich claims.

The contested ballots fall into four main categories. First is a group of 108 sticker ballots. Second is a group of 77 ballots on most of which the surname "Devine" only or the name "F. Devine" was written in. Third is a group of 46 ballots in which numerous name variations exist. Fourth is a group of 51 ballots, including the ten claimed by Wonderlich, which involve other irregularities.

The district court counted 79 of the contested ballots for Devine, but Wonderlich contends it erred in doing so. Devine asserts the court should have counted all 272 of the votes he claims.

I. *The sticker ballots.* Although the use of pasters or stickers for voting on paper ballots is not expressly provided for by statute in Iowa, authority for their use exists under § 49.99, The Code, which provides:

The voter may also insert in writing in the proper place the name of any person

for whom he desires to vote and place a cross or check in the square opposite thereto. The writing of such name shall constitute a valid vote for the person whose name has been written on the ballot without regard to whether the voter has made a cross or check opposite thereto. The making of a cross or check in a square opposite a blank without writing a name therein, shall not affect the validity of the remainder of the ballot.

The words "in writing" include "any mode of representing words or letters in general use." § 4.1(17), The Code. See *Barr v. Cardell*, 173 Iowa 18, 155 N.W. 312 (1915); *Ray v. Hogan*, 221 Mass. 223, 108 N.E. 1051 (1915), *Murray v. Floyd*, 216 Minn. 69, 11 N.W.2d 780 (1943).

The stickers used on the contested sticker ballots in this case were in the following form:

**FOR MEMBER**
**BOARD OF SUPERVISORS**
**Term Commencing 1977**

☐ FRANCIS P. DEVINE

The sticker accurately states the office and term for which Devine was running, and the words used to do so are a precise duplicate of words printed on the ballot just above the space for writing in a candidate's name in all but the Republican and petition-candidate columns on the printed ballot.

Wonderlich alleged the 108 [1] ballots containing these sticker votes could not be counted for Devine because the stickers have words other than Devine's name printed on them, and he alternatively alleged 52 of them could not be counted because they were not affixed in the proper place on the ballot. The district court rejected his first allegation but sustained his second. We must now determine if the court erred.

Two statutory provisions bear on this issue. First is the proscription of § 49.98 against marking a ballot in any manner for the purpose of identifying it. Second is the

---

1. He attacked an additional sticker ballot because it was voted in the Republican column.

This ballot is among those discussed in division IV.

requirement of § 49.99 that a write-in vote be inserted "in the proper place" on the ballot.

The .extra words on the stickers would invalidate the ballots if they constituted identifying marks within the meaning of § 49.98. This concept is explained in *Fullarton v. McCaffrey*, 177 Iowa 64, 70–72, 158 N.W. 506, 508 (1916), as follows:

> The distinguishing mark prohibited by law is one which will enable a person to single out and separate the ballot from others cast at the election. It is something done to the ballot by the elector designedly and for the purpose of indicating who cast it, thereby evading the law insuring the secrecy of the ballot. In order to reject it the court should be able to say, from the appearance of the ballot itself, that the voter likely changed it from its condition when handed to him by the judges of election, otherwise than as authorized, for the purpose of enabling another to distinguish it from others.
> * * *
> What is an identifying mark is not defined in our statute, and whether any mark on a ballot other than the cross authorized to be placed thereon was intended as a means of identifying such ballot must be determined from the consideration of its adaptability for that purpose, its relation to other marks thereon, whether it may have resulted from accident, inadvertence or carelessness or evidenced design and the similarity of the ballot with others cast and the like. In other words, the court, in deciding the issue * * * may, and should, consider all the evidence and circumstances bearing thereon precisely as in passing on any other issue.
> Electors are not presumed to have acted corruptly and identifications only which may fairly be said to be reasonably suited for such purpose, and likely to have been so intended, will justify the rejection of the ballot.

See also *Headington v. North Winneshiek Comm. School Dist.*, 254 Iowa 430, 117 N.W.2d 831 (1962); *Beck v. Cousins*, 252 Iowa 194, 106 N.W.2d 584 (1960).

■ The statute barring identifying marks originated from a desire to guard against the possibility of a vote seller indicating to a vote buyer in advance how his ballot could be distinguished so the buyer could determine if the bribed voter had carried out his agreement. The issue as to whether a particular ballot violates the prohibition is ordinarily one of fact.

■ We agree with the district court that the presence of the extra words on the stickers did not invalidate the 108 ballots. The words were the same as appeared on the ballot; they appeared on all the stickers which the auditor had caused to be printed and obviously were not calculated to permit individual ballots to be identified. They did not constitute identifying marks within the meaning of the prohibition. See *Ray v. Hogan*, 221 Mass. 223, 108 N.E. 1051 (1951) (the extra words "three years" stating the term of office did not invalidate ballots); 26 Am.Jur.2d Elections § 269 at 96 ("The fact that unnecessary words are printed on stickers used * * * is not a ground for rejecting a ballot.")

■ Wonderlich also asserts the 108 ballots are invalid because the additional language spoiled them. The principal basis for this assertion is § 49.68, The Code, which governs instructions to voters. However, this statute is inapplicable. It provides voters are to be instructed not to vote spoiled or defaced ballots. § 49.68(6). A separate provision authorizes a voter to return a spoiled ballot for a new one. § 49.100, The Code. However, assuming a ballot would be "spoiled" by attaching one of the Devine stickers to it, § 49.68 does not make a "spoiled" ballot invalid as such because it does not establish a standard for determining the validity of ballots.

The statute is a precautionary device. It is procedural rather than substantive. When construed with § 49.100, it means that when a ballot contains an erasure, crossed out words or other extraneous markings, it is spoiled or defaced and may therefore be replaced. However, when the

ballot is not replaced it is not invalid so long as the voter's intent can be ascertained and the markings were not placed on the ballot for the purpose of identifying it.

The instructions "do not supersede the statutes, but are intended to guide the voter, and especially to enable him to avoid any mistake in expressing his choice, and prevent him from loading his ballot with identifying marks." *Fullarton v. McCaffrey,* 177 Iowa 64, 68, 158 N.W. 506, 507 (1916). The question remains one of voter intent and absence of identifying marks. The provisions of § 49.68 do not provide a basis for holding the 108 ballots invalid.

■ Wonderlich's alternative challenge to 52 of the sticker ballots is based on an alleged violation of § 49.99 which requires write-ins to be inserted "in the proper place". This requirement serves three purposes. First, it helps prevent the fraudulent alteration of ballots to conceal votes properly marked by another for a different candidate. *In re Keogh-Dwyer,* 85 N.J.Super. 188, 199, 204 A.2d 351, 356 (1964), rev'd on other grounds, 45 N.J. 117, 211 A.2d 778 (1965). Second, it limits the opportunity to use placement of stickers to identify the ballot. *Sims v. George,* 250 Ind. 595, 236 N.E.2d 820 (1968). Third, it serves the obvious purpose of preserving the integrity of the ballot by insuring the vote is cast as the elector intends.

■ To be valid, the write-in vote must be cast in substantial compliance with the statute. See *Brown v. McCollum,* 76 Iowa 479, 486, 41 N.W. 197, 199 (1889) (write-in slightly above or below its proper place does not invalidate the ballot). We hold, in accordance with the majority rule, that the standard is met when the sticker is close enough to the space designated for the write-in to show the elector's intention. See 29 C.J.S. Elections § 179 at 510 ("[I]t is not sufficient if the sticker is placed under the name of some other office, but a ballot should not be rejected * * * where the sticker is placed so near the name of the office voted for as clearly to indicate the elector's intention.").

Sticker votes were upheld in the following cases where some deviation in placement existed. See *Bartlett v. McIntire,* 108 Me. 161, 175, 79 A. 525, 531 (1911) ("When a sticker is so placed that enough of the top parts of the letters of the designation remain, so that the eye can see what the office was, the vote should be counted."); *Ray v. Hogan,* 221 Mass. 223, 108 N.E. 1051 (1915); *Cory v. MacKenzie,* 297 Mich. 523, 298 N.W. 120 (1941); *Burns v. Rodman,* 342 Mich. 410, 70 N.W.2d 793 (1955) (stickers placed under rather than opposite name of office); *Sawyer v. Hart,* 194 Mich. 399, 160 N.W. 572 (1916) (sticker covered words which were not material); *Hanson v. Emanuel,* 210 Minn. 271, 297 N.W. 749 (1941) (stickers too wide for spot, sticker upside down, and sticker extending over edge of ballot); *Erickson v. Paulson,* 111 Minn. 336, 126 N.W. 1097 (1910) (covering printed matter); *Roberts v. Bope,* 14 N.D. 311, 103 N.W. 935 (1905).

Deviation in placement has been held to be too great in other cases. See *Sims v. George,* 250 Ind. 595, 236 N.E.2d 820 (1968) (stickers at various places on ballots other than space provided); *O'Brien v. Board of Election Comm'rs.,* 257 Mass. 332, 153 N.E. 553 (1926) (same); *Read v. McPherson,* 255 Mich. 604, 238 N.W. 477 (1931) (sticker in wrong column); *Murray v. Floyd,* 216 Minn. 69, 11 N.W.2d 780 (1943) (sticker under wrong office); *In re Keogh-Dwyer,* 85 N.J. Super. 188, 204 A.2d 351 (1964), rev'd on other grounds, 45 N.J. 117, 211 A.2d 778 (sticker over opposing candidate's name).

Cases relied on by Wonderlich and the district court were decided under a minority rule requiring strict compliance with statutes relating to placement of stickers, and we decline to follow them. See *In re Election of Supervisor in Springfield Twp.,* 399 Pa. 37, 159 A.2d 901 (1960); *State ex rel. Browne v. Dist. Ct.,* 167 Mont. 477, 539 P.2d 1182 (1975).

■ We have examined the 52 ballots on which Wonderlich contends stickers were incorrectly placed. We find the placement of these stickers substantially complies with the statute. Although on 30 ballots they

conceal the words "Township Ticket," printed on the ballot directly below the space for supervisor write-ins, the voters' intent to cast these sticker votes for Devine in the board of supervisors race remains clear.

We hold that the district court should have counted all 108 rather than only 56 of the challenged sticker ballots for Devine.

II. *The surname votes.* The district court refused to count for Devine 77 ballots on which only his surname or first initial and surname were written in. The surname "Devine" was used on 49 of them, the designation "Mr. Devine" on three, and the name "F. Devine" on the remaining 25.

▆▆▆▆ We have previously held that a write-in vote showing a candidate's surname alone is valid when it appears the use of the surname is sufficient in the circumstances to indicate for whom the voter intended to cast his ballot. *Beck v. Cousins,* 252 Iowa 194, 106 N.W.2d 584 (1960); *Brown v. McCollum,* 76 Iowa 479, 41 N.W. 197 (1889). As these cases hold, the issue is to be decided in light of all facts of a general public nature surrounding the election which the voter may be presumed to know and in view of which he may be presumed to have exercised his franchise. Among the circumstances bearing on the determination of voter intent are whether the write-in candidacy was well publicized and whether other candidates and other residents of the locality involved had the same or similar surname.

In this case Devine's candidacy was well publicized and advertised. Because of this and because of his prior candidacy for the same office, his name was familiar to many voters in this rural, lightly-populated county. Ten other residents of the county bore the same surname, but all were relatives of Devine and none was a candidate for this or any other office. One was his 70 year-old aunt and the others were all members of his immediate family. In addition, another person, a non-relative named Daniel Edward Devine, had died in March 1976, about eight months before the election.

The circumstances here are sufficiently close to those in the *Brown* and *Beck* cases to warrant the same result. In view of Devine's active candidacy, the publicity and advertising which accompanied it, and the unlikelihood of his being confused with the few other persons having the same surname, none of whom were shown to be politically active, the use of his surname alone was sufficient to indicate a vote for him.

We find that the voters who wrote in the surname Devine, Mr. Devine, or F. Devine intended to vote for candidate Francis P. Devine.

In addition to the *Brown* and *Beck* cases, authorities from other jurisdictions support this conclusion. See *Fitzsimmons v. Wilks,* 25 Cal.App. 56, 142 P. 892 (1914) (three members of immediate family bore same surname); *Kreitz v. Behrensmeyer,* 125 Ill. 141, 17 N.E. 232 (1888) (other persons in the county had the same surname but none was a candidate); *Gulino v. Cerny,* 13 Ill.2d 244, 148 N.E.2d 724 (1958); *Dupin v. Sullivan,* 355 S.W.2d 676 (Ct.App.Ky.1962) (other persons in the city had the same surname but were not candidates); *Petrie v. Curtis,* 387 Mich. 436, 196 N.W.2d 761 (1972); *Kasten v. Guth,* 395 S.W.2d 433 (Mo.1965); *Petition of Fifteen Registered Voters on behalf of Flanagan,* 129 N.J.Super. 296, 323 A.2d 521 (1974) (nine other registered voters had the same surname but none was a candidate); *Chonin v. Millspaugh,* 13 Misc.2d 841, 180 N.Y.S.2d 674 (1958); *Keenan v. Briden,* 45 R.I. 119, 119 A. 138 (1922); Annot., 86 A.L. R.2d 1025 et seq. See also 26 Am.Jur.2d Elections § 272 at 99 ("Although some courts deem themselves bound by a stricter rule, it has been held that a ballot that contains a candidate's surname only may be counted, even though there are other persons in the county having the same surname."); 29 C.J.S. Elections § 180 at 518.

We hold the district court erred in refusing to count these 77 votes for Devine.

▆▆▆▆ III. *Other name variations.* The trial court counted 19 of 46 ballots for Devine on which numerous variations of his name appeared. The principle which is ap-

plicable in this situation is similar to the one involved when the surname alone is written in. The voter's intention, if it can be ascertained, should not be defeated or frustrated by the fact the name of the candidate is misspelled, or the wrong initials were employed, or some other slightly different name of similar pronunciation or sound has been written instead of the actual name of the candidate intended to be voted for. *Brown v. McCollum,* 76 Iowa 479, 485, 41 N.W. 197, 198 (1889). In *Brown,* ballots were counted for Ella S. Brown on which the write-ins were "Mrs. A. Brown", "Ella Brown", "Miss Emma Brown", and "Elice Brown".

█ In the present case the district court counted 19 votes for Devine where the name variations were slight. Examples include "France Devine", "France P. Defvine", and "Franics P. Deiven". These all appear to be attempts by voters to cast their ballot for Devine, and we believe the trial court was correct in counting these votes for him.

█ However, the court rejected an additional ballot which comes within the same principle. This ballot was cast for "Frank Devine". We find it sufficiently reflects an intent to vote for Francis P. Devine and should have been counted for him.

█ Ballots which were rejected by the district court include five cast for "Dan Devine", one for "Dan P. Devine", one for "Danny Devine", one for "D. Devine", and one for "Daniel P. Devine". The court rejected eight ballots cast for "James", "James P." and "Jim" Devine. Also rejected were two votes for "Russell Devine", two for "P. Devine", one each for "R. P. Devine", "Louis P. Devine", "Francis Levine", "Frances D. Levine" and "V. Devine". Although we suspect these voters intended to vote for Francis P. Devine, we are not persuaded their intent to do so was adequately shown. The variations in given name are not similar to the candidate's true name nor did it appear he was known by any of those names. Write-ins were rejected in similar circumstances in *Bartlett v.*

*McIntire,* 108 Me. 161, 79 A. 525 (1911), *O'Brien v. Board of Election Comm'rs.,* 257 Mass. 332, 153 N.E. 553 (1926), *Murray v. Floyd,* 216 Minn. 69, 11 N.W.2d 780 (1943), *Application of Jeffrey,* 198 N.Y.S.2d 966 (1960), and *Keenan v. Briden,* 45 R.I. 119, 119 A. 138 (1922).

We hold the district court was right in its conclusions as to the ballots containing name variations except for the one additional ballot which should have been counted for Devine.

IV. *Miscellaneous irregularities.* The remaining 51 contested ballots involve various alleged deficiencies. Forty-one of these votes are claimed by Devine and ten by Wonderlich. The district court rejected all but four of the ballots. It counted those four for Devine. However, we believe it was mistaken in rejecting most of the ballots for both parties.

The court relied on § 49.68, The Code, is making a ballot containing erasures or crossed out words invalid. However, as explained in division I, this statute does not establish standards for determining the validity of ballots. Instead it lists precautionary instructions which are to be given to voters. *Fullarton v. McCaffrey,* 177 Iowa 64, 68, 158 N.W. 506, 507 (1916). It does not provide a basis for declaring ballots invalid.

█ The primary test of validity is whether the voter's intent is sufficiently shown. *Brandenburg v. Hurst,* 289 Ky. 155, 158 S.W.2d 420 (1942). Extraneous erasures, crossed out words or other markings do not void a ballot unless they have been placed on it as identifying marks. See *Opinion of the Justices,* 369 A.2d 233 (Me. 1977); *In re Keogh-Dwyer,* 85 N.J.Super. 188, 204 A.2d 351 (1964), rev'd on other grounds, 45 N.J. 117, 211 A.2d 778 (1965).

Under these principles we hold the court should have counted 19 additional votes for Devine, was right in counting the four votes which it did for him, and should have counted nine disputed votes for Wonderlich.

█ On 13 of these ballots Devine's name was written in twice with one of the names crossed out. On one the name

"Francis" was crossed out and the full name correctly written in. On another a "blot" preceded the name "Devine" with "Francis" written under the "blot". On another the name was written three times and crossed out twice. In each of these 16 situations it is obvious the voters were confused regarding where to write in Devine's name. We believe this confusion caused the voters to cross out and rewrite the name, and no evidence exists of an intent to place identifying marks on these ballots.

█ The same is true of three other Devine ballots which the district court rejected. On one an erasure existed in the box next to the office of state senator. On another an erasure existed in the box next to the name of Wonderlich. On the third the election officials had given the voter a ballot marked "sample ballot" in red ink. We hold these votes should also have been counted for Devine.

The four votes counted for Devine which Wonderlich argues should not have been counted all contain analogous markings and were properly counted.

█ Nine of the Wonderlich ballots come within the same principle. However, the remaining disputed Wonderlich ballot contains a vote for an additional person for the supervisor position. Because this made the vote ambiguous, the district court was right in rejecting it.

█ The remaining 18 ballots, all claimed by Devine, contain other irregularities. On eight of them, Devine's name was put under Wonderlich's name in the Republican column. The issue is whether this is "the proper place" for a write-in. Although space existed where the name was placed, the form for the write-in was not printed on the ballot like it was under all but one of the other columns, and, of course, Devine was a Democratic and not a Republican candidate. If it was not wrong for the voters to write the name in the Republican column, it was not wrong for them to place it under Wonderlich's name because that was within the space in which the office was designated.

We have not had a case on this issue, but a decision from Washington in which a similar problem was involved is persuasive. In *Knowles v. Holly,* 82 Wash.2d 694, 513 P.2d 18 (1973), the court held the correct party designation is not essential to the validity of a general election write-in vote. A mistake as to the candidate's party is not a mistake of his identity.

No doubt exists here of the voters' intent to cast these eight ballots for Devine. We hold they should have been counted for him. See also *Sizemore v. Henson,* 264 S.W.2d 865 (Ct.App.Ky.1954) (write-in of independent under the name of the Republican candidate—ballot held valid); *Frothingham v. Woodside,* 122 Me. 525, 120 A. 906 (1923) (ballot valid where Democratic write-in placed in Republican column). We note that at least three write-in votes were cast for Wonderlich in the Democratic column and were counted.

█ On seven other ballots Devine's name was written in twice, once in the Democratic column and once in the Independent column. A voter may not vote for more than one candidate for a single office. § 49.93, The Code. However, the statutes do not speak to the problem of voting twice on a single ballot for one candidate. We believe common sense and general principles should govern. No doubt exists regarding the voters' intent to vote for Devine. These ballots are valid as single votes for Devine and should have been counted for him. See *Sizemore v. Henson,* 264 S.W.2d 865 (Ct.App.Ky.1954) (ballot marked twice for same candidate); *Howard v. Harrington,* 114 Me. 443, 96 A. 769 (1916) (ballot not invalid when same name placed on it in writing and by sticker); *Frothingham v. Woodside,* 122 Me. 525, 120 A. 906 (1923) (marking ballot twice for same candidate was a mere emphasis of choice).

We believe the district court was right in holding invalid the remaining three disputed Devine ballots.

However, of the 41 disputed ballots discussed in this division which Devine claims, we hold the district court should have coun-

ted 38 for him instead of four. Of the ten disputed votes claimed by Wonderlich, we hold the court should have counted nine.

We have held 164 ballots rejected by the district court should have been counted for Devine, making his total 2667. Nine additional votes should have been counted for Wonderlich, making his total 2647.

We hold Devine won the election. The case is reversed and remanded for judgment ordering issuance of a certificate of election to him in conformity with this holding.

REVERSED AND REMANDED.

All Justices concur.